# United States Court of Appeals
# for the Federal Circuit

————————————

**PETRO-HUNT, L.L.C.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

————————————

2016-1981, 2016-1983

————————————

Appeals from the United States Court of Federal Claims in Nos. 1:00-cv-00512-MBH, 1:11-cv-00775-MBH, Judge Marian Blank Horn.

————————————

Decided: July 17, 2017

————————————

JOSEPH RALPH WHITE, White Andrews, LLC, Oxford, MS, argued for plaintiff-appellant. Also represented by SHARON ANDREWS, BRUCE ALAN BAKER, JR., White, Andrews & Shackelford, LLC, New Orleans, LA; EDMUND MICHAEL AMOROSI, Smith, Pachter, McWhorter, PLC, Tysons Corner, VA; D. JOE SMITH, Jenner & Block LLP, Washington, DC.

KATHERINE J. BARTON, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Represented by JOHN CRUDEN, BRIAN C. TOTH.

---

Before PROST, *Chief Judge,* CLEVENGER, and REYNA, *Circuit Judges.*

CLEVENGER*, Circuit Judge.*

Petro-Hunt, L.L.C. appeals the decision of the United States Court of Federal Claims to dismiss its claims for permanent takings, temporary takings, judicial takings, and breach of contract by the United States ("United States" or "the Government"). The Court of Federal Claims dismissed Petro-Hunt's permanent takings claims, contract claims, and some temporary takings claims under the statute of limitations. *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51 (2009) ("*Petro-Hunt I*"). The Court of Federal Claims subsequently held that the remaining temporary takings claims were barred by 28 U.S.C. § 1500. *Petro-Hunt, L.L.C. v. United States*, 105 Fed. Cl. 37 (2012) ("*Petro-Hunt II*"). And, because Petro-Hunt's judicial takings claim would require the Court of Federal Claims to question the merits of the Fifth Circuit's decision regarding the same servitudes asserted in the instant case, the Court of Federal Claims held it also lacked jurisdiction over those claims. *Petro-Hunt, L.L.C. v. United States*, 126 Fed. Cl. 367 (2016) ("*Petro-Hunt III*"). Because we agree with the Court of Federal Claims' reasons for its dismissal of Petro-Hunt's claims, we affirm.

I

The facts of this case are generally undisputed and are set forth in the Court of Federal Claims' multiple decisions. *See Petro-Hunt I*, 90 Fed. Cl. at 53–57. We recite here the facts pertinent to the issues before us.

A

Petro-Hunt's claims relate to ninety-six mineral servitudes underlying roughly 180,000 acres of the Kisatchie

National Forest in Louisiana ("Kisatchie"). Under Louisiana law, the right to enter land and extract minerals can be held separately from ownership of the land in the form of a mineral servitude. *Petro-Hunt I*, 90 Fed. Cl. at 53. Such servitudes generally prescribe (i.e., revert back to the landowner) if not used for a period of ten years. *Id.* This ten-year rule of prescription cannot be modified by contract. *Id.*

Between 1932 and 1934, the original owners of the relevant servitudes, Bodcaw Lumber Company and Grant Timber Company, transferred six mineral conveyances, resulting in ninety-six servitudes, to Good Pine Oil. Each of these six deeds conveying mineral rights to Good Pine Oil contained a clause contemplating that a ten-year prescriptive period would apply. From 1934 to 1937, Bodcaw and Grant conveyed, through eleven written instruments, 180,000 acres of land, burdened by ninety-six mineral servitudes in favor of Good Pine Oil, to the United States. All but one of the eleven transfer instruments explicitly stated that the conveyances were subject to one or more of the mineral deeds granting rights to Good Pine Oil.

In 1940, the Louisiana legislature enacted Act 315 of 1940, 1940 La. Acts 1250 ("Act 315").[1] Act 315 created an exception to Louisiana's law of prescription and retroac-

---

[1]    Act 315 reads in full: "[W]hen land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America . . . , and by the act of acquisition, verdict or judgment, oil, gas, and/or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas and/or other minerals or royalties, still in force and effect, said rights so reserved or previously sold shall be imprescriptible."

tively confirmed that all outstanding, but not yet pre-scribed mineral rights reserved in land sold to the United States, were now imprescriptible, so long as the United States remained the landowner.

In 1941, Good Pine Oil transferred its mineral rights to William C. Brown. One year later, Brown transferred his mineral rights to Nebo Oil Company. Based on Act 315, Nebo Oil believed it had acquired imprescriptible mineral servitudes.

In 1948, the United States filed a declaratory judg-ment against Nebo Oil, claiming that Nebo's mineral rights to an 800 acre tract of land had prescribed to the Government due to non-use. The district court ruled that Act 315 was retroactive and thus Nebo Oil owned the mineral property in perpetuity. *United States v. Nebo Oil Co.*, 90 F. Supp. 73, 89 (W.D. La. 1950). On appeal, the Fifth Circuit agreed, holding that Nebo Oil's mineral rights to that specific tract were imprescriptible. *United States v. Nebo Oil Co.*, 190 F.2d 1003, 1010 (5th Cir. 1951) ("*Nebo Oil*").

In 1973, the Supreme Court decided *United States v. Little Lake Misere Land Co.*, 412 U.S. 580 (1973). The Court held that Act 315 could not be applied retroactively to outstanding mineral interests in land acquired by the United States under the Migratory Bird Conservation Act, 45 Stat. 1222, 16 U.S.C. §§ 715–715s. *Id.* at 595. It reasoned that retroactive application of Act 315 would deprive the United States of "bargained-for contractual interests" by abrogating the terms of the acquisition instruments relating to prescription and thus was "plainly hostile to the interests of the United States." *Id.* at 597. Notably, the Court did not overrule *Nebo Oil* and distin-guished its facts. *Id.* at 586.

In the 1980s, relying on the Court's decision in *Little Lake Misere*, the Government, through the Bureau of Land Management ("BLM"), began to issue mineral leases

on Petro-Hunt's mineral property. While the parties disagree as to the exact timing of these leases (and even as to the number thereof), it appears that the majority of them were granted beginning in 1991, with more than forty-five leases made from that year up to the beginning of this lawsuit. Each lease was for a period of ten years.

In the 1990s, owners of the mineral servitudes disputed the Government's issuance of leases on their mineral property. In response, in 1991, the Forest Service informed BLM, in a letter on which Hunt Petroleum (a co-owner of the relevant servitudes) was copied, that all but two of the mineral servitudes had prescribed and were now owned by the United States. The letter cited a 1986 U.S. Department of Agriculture legal opinion indicating that the United States had ownership of the servitudes on all parcels acquired before the enactment of Act 315 and on which no wells had been drilled. In 1993, BLM responded to another protest by Hunt Petroleum in a letter to Hunt and Placid Oil, its co-owner at the relevant time, by citing a title report indicating that the servitudes had prescribed to the United States. In 1998, Petro-Hunt acquired Placid Oil's 64.3% undivided interest in the servitudes and thus owns the mineral servitudes at issue in this case as a successor in interest.[2]

In 1996, Central Pines Land Company and other holders of mineral servitudes brought an action against the government and lessees under mineral leases granted by the government, seeking declaratory relief and to quiet title in the servitudes. *Central Pines Land Co. v. United States*, No. 2:96-cv-02000 (W.D. La. filed Aug. 22, 1996). Like those at issue in this case and in *Nebo Oil*, the

---

[2]    The other co-owners of the mineral servitudes are Kingfisher Resources, Inc., which owns an 18.9% undivided interest, and Hunt Petroleum Corporation, which owns a 16.8% undivided interest.

mineral servitudes in *Central Pines* were on property acquired by the United States for Kisatchie prior to Act 315's enactment. On appeal, the Fifth Circuit held that Act 315 could not provide the federal rule of decision because, as in *Little Lake Misere*, it was hostile to the United States' interests in "obtaining the mineral rights via the default rule of prescription in place before Act 315." *Central Pines Land Co. v. United States*, 274 F.3d 881, 891 (5th Cir. 2001). Instead, the court held that the ten-year prescriptive period of residual (pre-Act 315) Louisiana law should govern the case and thereby concluded that the servitudes on Kisatchie lands had prescribed for non-use. *Id.* at 892, 894. The Supreme Court denied Central Pines's petition for a writ of certiorari. *Central Pines Land Co. v. United States*, 537 U.S. 822 (2002). While summary judgment motions were pending in the district court, Central Pines had filed a complaint in the Court of Federal Claims, alleging a taking in violation of the Fifth Amendment based on the same facts alleged in its district court complaint. *Central Pines Land Co. v. United States*, 99 Fed. Cl. 394 (2011). This court affirmed the Court of Federal Claims' dismissal of Central Pines's taking claims for lack of jurisdiction pursuant to 28 U.S.C. § 1500. *Central Pines Land Co. v. United States*, 697 F.3d 1360, 1367 (Fed. Cir. 2012).

B

On February 18, 2000, Petro-Hunt and others not party to the current action filed suit against the Government in the United States District Court for the Western District of Louisiana. Complaint, *Petro-Hunt, L.L.C. v. United States*, 179 F. Supp. 2d 669 (W.D. La. 2001) (No. 00-cv-0303), ECF No. 1 (the "Quiet Title Action"). Petro-Hunt alleged it was the owner of all aforementioned ninety-six mineral servitudes under the theory that Act 315 and the *Nebo Oil* decision had rendered them imprescriptible. It further alleged that starting in 1991, the United States, claiming ownership over the mineral

rights, wrongfully granted a series of oil and gas leases covering the property in interest. Based on these factual allegations, Petro-Hunt filed for a declaratory judgment under 28 U.S.C. § 2409a to quiet title to the property. In the alternative, it alleged an unconstitutional taking without just compensation in violation of the Fifth Amendment.

In 2001, the district court granted summary judgment in Petro-Hunt's favor and ruled that *Nebo Oil* precluded the United States from litigating title to the ninety-six mineral servitudes, which the court held Petro-Hunt owned in perpetuity. *Petro-Hunt, L.L.C. v. United States*, 179 F. Supp. 2d 669 (W.D. La. 2001). However, in 2004, the Fifth Circuit reversed the district court, holding that res judicata applied only to the mineral rights in the 800-acre parcel described in *Nebo Oil*. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396–97 (5th Cir. 2004). It found that Petro-Hunt's remaining mineral property was subject to the contractual provisions permitting prescription after ten years of non-use. *Id*. at 398–99. The Fifth Circuit remanded the case to the district court for it to determine whether any of the servitudes had prescribed. The Supreme Court denied Petro-Hunt's petition for writ of certiorari. *Petro-Hunt, L.L.C. v. United States*, 543 U.S. 1034 (2004).

In 2005, the parties stipulated that five servitudes, representing approximately 109,844 acres, still existed due to use, but that the remainder had prescribed. So the district court issued a judgment that Petro-Hunt was the owner of those five servitudes, now subject to the law of prescription, and 800 acres of the 1120 acre *Nebo Oil* servitude, which remained imprescriptible. Quiet Title Action, ECF No. 228. It additionally found that ninety servitudes and the remaining 320 acres of the *Nebo Oil* servitude had prescribed to the United States. *Id*. at 2–3. In 2007, the Fifth Circuit affirmed the district court's order. *Petro-Hunt, L.L.C. v. United States*, No. 06-30095,

2007 WL 715270 (5th Cir. Mar. 6, 2007) (per curiam). Petro-Hunt's petition for writ of certiorari was denied. *Petro-Hunt, L.L.C. v. United States*, 552 U.S. 1242 (2008).

On August 24, 2000, while summary judgment motions were pending in district court, Petro-Hunt filed a complaint in the Court of Federal Claims, alleging a taking without just compensation in violation of the Fifth Amendment. Complaint, *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51 (2009) (No. 00-cv-512), ECF No. 1 (the "2000 Case"). Similar to its district court complaint, Petro-Hunt alleged that, pursuant to Act 315 and *Nebo Oil*, it owned in perpetuity the same ninety-six mineral servitudes at issue in the Quiet Title Action. Petro-Hunt noted its pending case in the district court and explained that it filed its taking claims in the Court of Federal Claims as a result of the Government's allegation in its answer that the district court lacked jurisdiction over Petro-Hunt's takings claims. In November 2000, the Court of Federal Claims granted the parties' joint motion to stay the case pending the resolution of the Quiet Title Action in the district court. 2000 Case, ECF No. 6.

On June 25, 2008, after the Quiet Title Action concluded and the stay was lifted, Petro-Hunt filed its first amended complaint in the Court of Federal Claims, adding alternative claims for breach of contract and reformation. 2000 Case, ECF No. 51. The amended complaint divided the takings claims in the original complaint into permanent and temporary takings claims, and added four contract-based claims founded on the transfer instruments by which the Government obtained the lands subject to the servitudes from Bodcaw and Grant. In September 2008, the United States moved to dismiss all of Petro-Hunt's claims for lack of jurisdiction for failure to state a claim.

In November 2009, the Court of Federal Claims granted in part and denied in part the Government's

motion. It held that Petro-Hunt's permanent takings claim and contract-based claims accrued, subject to the accrual suspension rule, no later than 1993, based on letters to the mineral servitude owners regarding the Government's claims of mineral ownership of specific parcels in the Kisatchie. *Petro-Hunt I*, 90 Fed. Cl. at 63–64, 67–68. The Court of Federal Claims therefore dismissed these claims as untimely under 28 U.S.C. § 2501. *Id.* The Court of Federal Claims further held that the temporary takings claims accrued when the United States entered into mineral leases on the servitudes with third parties, not when the leases terminated. *Id.* at 65–67. So the Court of Federal Claims dismissed as time-barred Petro-Hunt's temporary takings claims founded on the Government's mineral leases that were issued more than six years before Petro-Hunt filed suit on August 24, 2000. *Id.* Regarding the leases entered into less than six years prior to Petro-Hunt's filing suit, the Court of Federal Claims stated that discovery was needed to determine whether each relevant servitude prescribed by the time the leases were issued. *Id.* at 69. The Court of Federal Claims denied Petro-Hunt's motion for reconsideration.

In 2010, Petro-Hunt filed a restated second amended complaint, adding a judicial takings claim founded on the result of the Quiet Title Action in the Fifth Circuit. 2000 Case, ECF No. 95. Petro-Hunt said its new complaint was prompted by the Supreme Court's decision regarding judicial takings in *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702 (2010). In May 2011, based on the Supreme Court's decision in *United States v. Tohono O'odham Nation*, 563 U.S. 307 (2011), the Government filed a motion to dismiss Petro-Hunt's remaining claims under 28 U.S.C. § 1500, arguing that those claims were pending at the district court when Petro-Hunt filed its complaint at the Court of Federal Claims and, therefore, the Court of Federal Claims lacked jurisdiction.

On November 11, 2011, Petro-Hunt filed a new suit in the Court of Federal Claims, reasserting the claims from the 2000 Case. Complaint, *Petro-Hunt, L.L.C. v. United States*, 105 Fed Cl. 37 (2012) (No. 11-cv-775), ECF No. 1 (the "2011 Case"). Soon thereafter, the Court of Federal Claims issued an order staying the 2011 Case. Later, in July 2015, the Court of Federal Claims consolidated Petro-Hunt's two actions. 2000 Case, ECF No. 210.

On May 2, 2012, the Court of Federal Claims granted the Government's motion to dismiss with regard to Petro-Hunt's remaining temporary takings claims under § 1500, finding that they were "essentially the same takings claims" that were pending in Petro-Hunt's district court action when it filed the Court of Federal Claims action. *Petro-Hunt II*, 105 Fed. Cl. at 43. The Court of Federal Claims concluded that Petro-Hunt's alternative compensation request in its district court complaint was pending when Petro-Hunt filed its temporary takings claims in the Court of Federal Claims and that the two suits were based on the same operative facts. *Id.* at 44. The court denied the Government's motion to dismiss with respect to the judicial takings claim, reasoning that it rested on the independent operative facts of the Fifth Circuit's 2007 decision and the Supreme Court's denial of certiorari in 2008. *Id.* at 45. The Court of Federal Claims denied Petro-Hunt's motion for reconsideration.

In January 2015, after discovery was completed, the United States moved to dismiss Petro-Hunt's sole remaining claim: the judicial takings claim. 2000 Case, ECF No. 198.

On February 29, 2016, the Court of Federal Claims entered a final judgment, disposing of all of Petro-Hunt's claims. *Petro-Hunt III*, 126 Fed. Cl. at 385. It ruled that it could not determine whether the Fifth Circuit took Petro-Hunt's mineral property without "scrutinizing" the merits of the Fifth Circuit's decision, and thus it lacked

jurisdiction to consider Petro-Hunt's judicial takings claim. *Id.* at 380 (citing *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court.")). The court reasoned that determining whether or not Petro-Hunt had an established property right at the relevant time would require the Court of Federal Claims to decide whether the Fifth Circuit was correct in finding that *Little Lake Misere* and *Central Pines* established that lands sold to the United States before the enactment of Act 315 were subject to Louisiana's ten-year prescription rule. *Id.* at 383–84. The court further noted that Petro-Hunt's own filings characterized the Fifth Circuit's decision as incorrect, further supporting its conclusion that adjudicating the judicial takings claim would require an improper exercise in collateral review. *Id.* at 384–85. The Court of Federal Claims also dismissed the 2011 Case because Petro-Hunt conceded that a ruling against it on the judicial takings claim, combined with the Court of Federal Claims' prior rulings, should result in dismissal of both actions. *Id.* at 385 n.14. The Court of Federal Claims thus entered final judgment in both actions for the United States

Petro-Hunt timely appealed and asks this court to reverse the Court of Federal Claims' dismissal of its permanent, temporary, and judicial takings claims, breach of contract claims, and claims for reformation, and remand for the Court of Federal Claims to adjudicate the merits of its claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

We review de novo a decision of the Court of Federal Claims to dismiss for lack of subject matter jurisdiction.

*Fidelity & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015).

A

We affirm the Court of Federal Claims' dismissal of Petro-Hunt's permanent takings claim and contract-based claims as untimely. A six-year statute of limitations governs claims before the Court of Federal Claims. 28 U.S.C. § 2501 (2004). A claim under the Fifth Amendment accrues when the taking action occurs. *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994) (citing *Steel Improvement & Forge Co. v. United States*, 355 F.2d 627, 631 (Ct. Cl. 1966)). Generally, such a taking occurs when the government deprives an owner of the use of his or her property. *See United States v. Causby*, 328 U.S. 256, 261–62 (1946). A permanent takings claim arises when (1) all the events which fix the government's liability have occurred; and (2) the plaintiff knew or should have known about the existence of these events. *See Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 358–59 (Ct. Cl.), *cert. denied*, 389 U.S. 971 (1967). Because the statute of limitations is jurisdictional, the plaintiff bears the burden of proof. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998).

We agree with the Court of Federal Claims that Petro-Hunt's permanent takings claim accrued, at the latest, in 1993. The statute of limitations for Petro-Hunt's permanent takings claim began to run in the 1940s when the servitudes at issue prescribed and the property interests were acquired by the United States. However, Petro-Hunt may be entitled to the benefit of the accrual suspension rule. Under the accrual suspension rule, the accrual of a claim is suspended under 28 U.S.C. § 2501 "until the claimant knew or should have known that the claim existed." *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (en banc). We agree with the Court of

Federal Claims that the accrual suspension rule applied to some extent due to the enactment of Act 315 and the *Nebo Oil* decision. But even application of the accrual suspension rule in this case does not save Petro-Hunt's permanent takings claim from being barred by the statute of limitations. The accrual suspension period ended no later than 1993 in this case, because that was when Petro-Hunt's predecessor in interest, Placid Oil, and its co-owner, Hunt Petroleum, explicitly learned that the United States was granting mineral leases on the servitudes and had deemed the servitudes to have prescribed to the Government. Because Petro-Hunt did not file its complaint until 2000, the six-year statute of limitations expired, and the Court of Federal Claims was correct to dismiss these claims as outside of its jurisdiction. Additionally, because Petro-Hunt's contract-based claims arose out of the same transactions as its permanent takings claim, the Court of Federal Claims properly applied the same reasoning to accrual of those claims and properly dismissed them.

We reject Petro-Hunt's argument that accrual of its permanent takings claim should have been suspended until resolution of the Quiet Title Action. Petro-Hunt relies on this court's decision in *Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005), for the proposition that it had to complete its Quiet Title Action in the district court before it could pursue its permanent takings claim in the Court of Federal Claims. Petro-Hunt contends that the Fifth Circuit's determination of the ownership of the servitudes was an "essential element" of its case in the Court of Federal Claims and therefore that case was not ripe for adjudication until the Fifth Circuit ruled that the relevant servitudes were subject to prescription. We disagree with Petro-Hunt that *Samish* compels us to decide that accrual of Petro-Hunt's claims was suspended until March 6, 2007, the date the Fifth Circuit affirmed the district court's judgment regarding

ownership of the servitudes. In *Samish*, the plaintiffs' action in the Court of Federal Claims depended on their status as an Indian tribe. Only a district court, acting on a challenge under the APA, had authority to review the status of the Indian tribe. *Id.* at 1373. Because plaintiffs' claim for retroactive benefits at the Court of Federal Claims depended on recognition of the Samish tribe, the claim did not accrue until the decision of the district court. *Id.* at 1373–74.

Conversely, in the case of a takings claim, the Court of Federal Claims has jurisdiction to determine the existence of property rights as a threshold inquiry in any takings case. *See Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed. Cir. 2002), *cert. denied*, 538 U.S. 906 (2003) (stating that there is a two-step approach to takings claims, where the first step is for a court to determine "whether the plaintiff possesses a valid interest in the property affected by the governmental action, i.e., whether the plaintiff possessed a 'stick in the bundle of property rights'" (quoting *Karuk Tribe of Cal. v. Ammon*, 209 F.3d 1366, 1374 (Fed. Cir. 2000))); *Resource Invs., Inc. v. United States*, 85 Fed. Cl. 447, 478 (2009) ("Before assessing plaintiffs' categorical takings claim, this court must, as a threshold matter, determine whether plaintiffs possessed a property interest protected by the Fifth Amendment."). Therefore, the Court of Federal Claims could have and would have addressed the threshold inquiry of whether Petro-Hunt had a property right in the servitudes. Accordingly, because Petro-Hunt's takings claims in the Court of Federal Claims did not depend on the result of the Quiet Title Action in the district court, the result of the Quiet Title Action was not an "essential element" of its case in the Court of Federal Claims. Petro-Hunt was not required to wait until the Quiet Title Action in the district court was decided to file its case in the Court of Federal Claims.

B

Because we hold that Petro-Hunt's temporary takings claims accrued at the time the leases were entered into, we affirm the Court of Federal Claims' dismissal of all temporary takings claims based on leases entered into six years prior to Petro-Hunt's filing in the Court of Federal Claims.[3]

That Petro-Hunt's temporary takings claims accrued at the start of the leases when the Government entered into possession of the land is consistent with the precedent of both the Supreme Court and this court. The Supreme Court in *United States v. Dow,* stated that, in general, a taking occurs when the United States enters into physical possession of the land at issue. 357 U.S. 17, 21–22 (1958). "It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues." *Id.* at 22. In *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), this court endorsed the rule that, no matter whether the physical taking is permanent or temporary, the "taking occurs when the owner is deprived of use of the property. . . . While the taking may be abandoned . . . the accrual date of a single taking remains fixed." *Id.* at 1235. Here, too, we adopt

---

[3] Regarding the 2000 Case, our holding applies to all leases entered into six or more years prior to August 24, 2000. Thus, sixty-eight of the leases asserted in the 2000 Case are barred. As discussed in Part II.C, the remainder of the leases asserted in the 2000 complaint are barred by § 1500. Regarding the 2011 Case, this holding applies to all leases entered into six or more years prior to November 17, 2011. Because all asserted leases in the 2011 Case were entered into prior to that date, our holding regarding Petro-Hunt's temporary takings claims affects all leases asserted in the 2011 Case.

the rule that a taking, permanent or temporary, occurs when the owner is deprived of use of the property, in this case, by physical possession. The temporary takings accrued when Petro-Hunt was deprived of use of the property at the beginning of each lease. Therefore, we conclude that all temporary claims based on leases that were entered into more than six years before Petro-Hunt filed suit on August 24, 2000, are barred by the statute of limitations.

Petro-Hunt argues that its temporary takings claims did not accrue until the end of each lease because temporary physical takings are analogous to, and therefore should be treated the same as, regulatory takings. In other words, Petro-Hunt asserts that the accrual rule should be the same for temporary physical takings as it is for regulatory takings. Generally, a party who has suffered a regulatory taking is allowed to wait to file suit until the process that began the taking has ceased. Compensation for a regulatory taking often cannot be measured until the government's act has completed because the economic impact and extent of the harm cannot be measured until the process that began it has ended. *See Creppel v. United States*, 41 F.3d 627, 632 (Fed. Cir. 1994) (stating that where there is a temporary regulatory taking, "property owners cannot sue for a temporary taking until the regulatory process that began it has ended . . . because they would not know the extent of their damages until the Government completes the 'temporary' taking"). Petro-Hunt alleges that the circumstances are the same for temporary physical takings; that is, the property owner will not know the extent of the damage until the temporary taking has ceased. For this reason, Petro-Hunt contends that it had the option to file its claim once the taking began or wait and determine the extent of the taking and the amount of just compensation owed before filing suit.

We disagree with Petro-Hunt that temporary physical takings are analogous to regulatory takings and therefore decline to adopt the rule Petro-Hunt proposes. Where regulatory takings rely heavily on the degree of diminution of the value of the property over time, the effect of a physical taking on a property owner can be measured as soon as the Government enters into possession of the physical property. *Dow*, 357 U.S. at 24. In explaining why a physical taking occurs at the time the Government enters into possession of the land, the Supreme Court stated that just compensation is a "reflection of the value of what the property owner gave up and the Government acquired" at the time the Government took possession, and that measurement at a later date may not accurately reflect the value of what was lost. *Id*. We think this reasoning is sound as applied to the leases here. While it is possible that the value of a servitude at the end of the ten-year lease period would be greater than at the beginning, it is also possible that the servitude would be deemed worthless at the lease's end. Indeed, as the Supreme Court stated:

> [I]f the difference between the market value of the fee on the date of the taking and that on the date of return were taken to be the measure, there might frequently be situations in which the owner would receive no compensation . . . because the market value of the property had not decreased during the period of the taker's occupancy.

*Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949); *see also Dow*, 357 U.S. at 24 ("[I]f the value of the property changed between the time the Government took possession and the time of filing, payment as of the latter date would not be an accurate reflection of the value of what the property owner gave up and the Government acquired.").

Because just compensation can be determined at the time the leases were entered into, we hold that a temporary physical taking accrues at the time the Government takes physical possession of the land.  Thus, all leases entered into at least six years prior to the date the complaint was filed are barred by the statute of limitations.

C

We also affirm the Court of Federal Claim's finding that the remaining temporary takings claims asserted in the 2000 Case not barred by the statute of limitations are barred by 28 U.S.C. § 1500.  Jurisdiction under § 1500 is "dependent on the state of things when the action is brought, and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation." *Central Pines*, 697 F.3d at 1367.  Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

In other words, § 1500 bars the Court of Federal Claims' jurisdiction over a suit if a plaintiff, upon filing in the Court of Federal Claims, has a suit pending in any other court "for or in respect to" the same claim. *Keene Corp. v. United States*, 508 U.S. 200, 209 (1993).  To determine whether § 1500 applies, a court must make two inquiries: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Resource Invs., Inc. v. United States*, 785 F.3d 660, 664 (Fed. Cir. 2015) (quoting

*Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013)). "Two suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit," *Tohono*, 563 U.S. at 317, or the legal theories asserted, *Keene*, 508 U.S. at 212.

To determine whether the § 1500 bar attached when plaintiffs filed their action in the Court of Federal Claims, we compare the operative facts underlying the claims pending in the two courts. *See Central Pines*, 697 F.3d at 1364.[4] A review of the complaints filed by Petro-Hunt at the district court and at the Court of Federal Claims reveals that the factual allegations are nearly identical.

---

[4] This case presents similar facts to *Central Pines*, where this court affirmed the Court of Federal Claims' dismissal of plaintiffs' takings claims as barred by § 1500. 697 F.3d at 1367. In *Central Pines*, plaintiffs alleged that the government improperly asserted ownership over mineral rights in property in Kisatchie that Central Pines claimed to own. *Id*. at 1362. Plaintiffs first filed suit in the district court, requesting a declaratory judgment to quiet title to the property and alternatively alleging an unconstitutional taking without just compensation in violation of the Fifth Amendment. *Id*. While summary judgment motions were pending in the district court, plaintiffs filed suit in the Court of Federal Claims, alleging a taking in violation of the Fifth Amendment. *Id*. at 1362–63. This court found that the Court of Federal Claims properly dismissed plaintiffs' claims as barred under § 1500 because the two suits were based on substantially the same operative facts. *Id*. at 1364–65. Those facts include the mineral servitudes at issue, the history of conveyances, the description of the government's behavior, and the claims of ownership. *Id*.

*Compare* Quiet Title Action, ECF No. 1, *with* 2000 Case, ECF No. 1. Both complaints describe the same mineral servitudes, the same history of conveyances of the land to the Government in the 1930s, the same history of conveyances of the mineral rights to Petro-Hunt and its predecessors from the 1940s to the 1990s, and the same allegedly wrongful use of the land by the Government. Both complaints allege that the Government had granted leases to the mineral servitudes as early as 1991, despite protests by Petro-Hunt's co-owners and predecessors. We disagree with Petro-Hunt that these are mere background facts and conclude that they are critical to its claims in both actions. In fact, both complaints allege these facts as support for a takings claim. Because we find that Petro-Hunt's district court complaint and Court of Federal Claims complaint allege nearly identical operative facts, we affirm the Court of Federal Claims' invocation of the § 1500 bar. *See, e.g.*, *Tohono*, 563 U.S. at 317–18 (finding two suits had substantial overlap of operative facts where plaintiff could have filed two nearly identical complaints without changing the claim in either suit in any significant way); *Central Pines*, 697 F.3d at 1365 ("Because plaintiffs filed two nearly identical complaints that, at best, repackaged the same conduct into two different theories, and at worst, alleged the same takings claim, we find that there is a substantial overlap of operative facts that implicates the § 1500 bar.").

Petro-Hunt makes several arguments on appeal as to why the § 1500 bar should not apply, and we reject each in turn.

Petro-Hunt disagrees that its temporary takings claims in the Court of Federal Claims were based on substantially the same operative facts as the claims in the Quiet Title Action and thus argues that § 1500's jurisdictional bar was not triggered. According to Petro-Hunt, the only similarities between these two suits are the background facts that provide context for the claims

presented. Petro-Hunt says that the Court of Federal Claims improperly conflated operative facts with background facts and contends that the facts relevant to the claims in its Quiet Title Action are unrelated to the conduct that gave rise to the takings. We reject this argument because the operative facts are nearly identical in each complaint, as discussed above.

Petro-Hunt states that its alternative request for just compensation in the Quiet Title Action was not a 'claim' for purposes of § 1500. Citing Rule 8(a) of the Federal Rules of Civil Procedure, Petro-Hunt argues that its alternative request was not a 'claim' because Petro-Hunt did not cite the district court's jurisdiction over that claim and did not assert that it was bringing a cause of action for a taking. As noted by the Government, this argument is waived because Petro-Hunt did not present this argument at the Court of Federal Claims. *See Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1369 (Fed. Cir. 2015) ("As a general principle, appellate courts do not consider issues that were not clearly raised in the proceeding below."). In any case, Petro-Hunt's complaint at the district court did state a takings claim: "Plaintiffs allege that the actions of the United States in confiscating their mineral interests amounts to an unconstitutional taking in direct violation of the Fifth Amendment of the United States Constitution, for which Plaintiffs should be compensated." Quiet Title Action, ECF No. 1 at ¶ 19. It is irrelevant to the § 1500 analysis that Petro-Hunt failed to cite a jurisdictional basis for this claim or that this claim was set forth under the "Relief Requested" heading rather than the "Cause of Action" heading. All that is required for two suits to be "for or in respect to the same claim" is that they be "based on substantially the same operative facts, regardless of the relief sought in each suit." *Tohono*, 563 U.S. at 317. As discussed above, we find that the 2000 Case and the Quiet Title Action are

based on substantially the same—in fact, nearly identical—operative facts.

Petro-Hunt argues that its alternative request for compensation in the Quiet Title Action was not 'pending' as required by § 1500, reasoning that the request was never litigated, argued, decided, or appealed. Moreover, Petro-Hunt argues that § 1500 should not bar a claim where the potential for duplicative litigation is not possible. Petro-Hunt asserts that duplicative litigation would not have been possible because the Court of Federal Claims has exclusive jurisdiction over takings claims for more than $10,000, and thus, the district court would not have been able to assert jurisdiction over its takings claims. We disagree with Petro-Hunt's reasoning and agree with the Government that Petro-Hunt's claim was pending for purposes of § 1500. Even though the claim was not "litigated, argued, decided, or appealed," as Petro-Hunt argues was required, it was pending because it had not been dismissed and was in front of the district court when Petro-Hunt filed its Court of Federal Claims complaint. *See Central Pines*, 697 F.3d at 1364 (explaining that the § 1500 bar attaches at the time the complaint is filed in the Court of Federal Claims). Additionally, whether or not the district court would have been able to exercise its jurisdiction over Petro-Hunt's takings claims is irrelevant. First, because district courts do have jurisdiction over takings claims for just compensation of $10,000 or less (under the Little Tucker Act) and because Petro-Hunt's complaint in its Quiet Title Action did not specify an amount, the district court did have jurisdiction over the takings claim on its face. *See, e.g., Smith v. Orr*, 855 F.2d 1544, 1552–53 (Fed. Cir. 1988) (stating that a Little Tucker Act case may proceed in district court if recovery is limited to $10,000, even when potential liability exceeds $10,000). Even so, whether or not the court where the claim is pending has jurisdiction is irrelevant. *See Keene*, 508 U.S. at 204 (applying § 1500 jurisdictional

bar to a case filed in the Court of Federal Claims where substantially the same claims were pending at a district court when the Court of Federal Claims case was filed, even though the district court ultimately dismissed those claims for lack of jurisdiction); *see also UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1021 (Fed. Cir. 1992) (en banc), *aff'd sub nom. Keene*, 508 U.S. 200 ("There is nothing in section 1500 to suggest a free floating jurisdictional bar that attaches only when the government files a motion to dismiss, or worse, when the court gets around to acting on it.").

Petro-Hunt also challenges the constitutionality of the § 1500 jurisdictional bar. Petro-Hunt contends that Congress is not allowed to dispense with the constitutional right to just compensation by withholding jurisdiction through statute. Since *Tohono* was decided, Petro-Hunt believes that § 1500 has been applied too broadly to cover not only rights granted by statute but also constitutionally created rights. In response, the Government finds Petro-Hunt's constitutional arguments to be "waived, inapplicable, and incorrect." Even if Petro-Hunt had argued this constitutional issue at the Court of Federal Claims, the Government contends it is without merit because Petro-Hunt could have avoided the § 1500 bar by not filing its takings claims in the district court or by dismissing it and then refiling it with its Court of Federal Claims complaint.

We find Petro-Hunt's argument to be unpersuasive. Section 1500 does not act as a general bar to constitutional rights, but instead was applied in this case because Petro-Hunt filed essentially the same case twice, pleading an unconstitutional taking in both district court and the Court of Federal Claims. The Court of Claims in *Tecon Engineers, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965), *cert. denied*, 382 U.S. 976 (1966), set forth the rule that § 1500 applies only when a suit is commenced in another court against the United States before the claim

is filed in the Court of Claims. *Id*. at 949.[5] In *Resource Investments*, this court applied the rule of *Tecon* and avoided the possible constitutional questions underlying application of § 1500 by stating that had the plaintiff filed his claim in the Court of Federal Claims before filing in the district court, the Court of Federal Claims could have considered his claims. 785 F.3d at 669–70; *see also id*. ("In [*Tecon*], our predecessor court found that the § 1500 bar operates *only* when the suit shall have been commenced in the other court before the claim was filed in [the Court of Federal Claims]. . . . We are bound by *Tecon*, which remains the law of this circuit." (citations and internal quotation marks omitted)). The same is true here. Petro-Hunt could have avoided the force of § 1500 by following *Tecon* and filing its case first in the Court of Federal Claims. *See Brandt v. United States*, 710 F.3d 1369, 1379 n.7 (Fed. Cir. 2013) (stating that *Tecon*'s order-of-filing rule "remains the law of this circuit"); *Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995) (the rule of *Tecon* "remains good law and binding on this court"). Thus, we find that application of § 1500 did not affect Petro-Hunt's right to assert its constitutional claim.

## D

Finally, we affirm the Court of Federal Claims' dismissal of Petro-Hunt's judicial takings claim because the Court of Federal Claims lacks jurisdiction to review the merits of a decision rendered by a federal district court. *See Shinnecock*, 782 F.3d at 1352 ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court."); *see also Boise*, 296 F.3d at 1344 (stating that "Article III forbids the Court of Federal

---

[5]    *Tecon* was overruled on other grounds by *UNR Industries, Inc. v. United States*, 962 F.2d 1013 (Fed. Cir. 1992).

Claims, an Article I tribunal, from reviewing the actions of an Article III court," and that "the Court of Federal Claims cannot entertain a takings claim that requires the court to scrutinize the actions of another tribunal" (citations and internal quotation marks omitted)); *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal." (quoting *Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001))).

Petro-Hunt's judicial takings claim alleges that the Fifth Circuit's holding that Petro-Hunt's mineral servitudes are subject to prescription for nonuse was a taking of its right to perpetual ownership of the servitudes. Petro-Hunt's claim to prior perpetual ownership is based on the Fifth Circuit's decision in *Nebo Oil*, which Petro-Hunt argued to the Fifth Circuit and again to the Court of Federal Claims should have applied to all of its mineral servitudes in Kisatchie and not just the specific ones at issue in *Nebo Oil*. In the Quiet Title Action, the Fifth Circuit held that *Nebo Oil* did not have such preclusive effect, and thus Petro-Hunt did not have perpetual ownership of any servitude except the one at issue in *Nebo Oil*. *Petro-Hunt*, 365 F.3d at 397–99. Therefore, to resolve Petro-Hunt's judicial takings claim, the Court of Federal Claims would necessarily have to review the Fifth's Circuit decision to decide whether Petro-Hunt ever had a cognizable property interest in perpetual ownership of the servitudes. To determine whether Petro-Hunt held imprescriptible mineral servitudes prior to the Fifth Circuit's ruling, the Court of Federal Claims must determine the res judicata or collateral estoppel effect of *Nebo Oil*, which was decided against Petro-Hunt in the Fifth Circuit's decision in the Quiet Title Action and became a final, nonappealable judgment in 2008. Thus, the Court of Federal Claims correctly dismissed Petro-Hunt's judicial takings claim because it could not determine if Petro-

Hunt's mineral servitudes were "previously imprescriptible" or "transformed" from private to public property without determining whether the Fifth Circuit's interpretation of precedent was correct. *Petro-Hunt III*, 126 Fed. Cl. at 385.

We disagree with Petro-Hunt that its case is comparable to *Boise*, where this court held that the Court of Federal Claims had jurisdiction to review the merits of plaintiff's Tucker Act claim after a district court had enjoined plaintiffs from logging on property. 296 F.3d at 1343–44. There, plaintiffs had accepted the validity of the district court's injunction and filed suit in the Court of Federal Claims to determine whether the injunction effected a taking of its property. *Id.* While Petro-Hunt contends that it has accepted the result of the Quiet Title Action and therefore the Court of Federal Claims need not review the merits of the Fifth Circuit's decision, its briefings at the Court of Federal Claims and to this court show that Petro-Hunt is actually challenging the result. In its briefs on appeal, it requests that this court remand to the Court of Federal Claims for it to "determin[e] whether Petro-Hunt held a compensable property interest that was taken and, if so, what compensation is due." Appellant's Br. 54. Petro-Hunt also stated in its opposition to the Government's motion to dismiss at the Court of Federal Claims that "[t]he ultimate result of the [Quiet Title Action] was inconsistent with the principles set forth in [*Nebo Oil*] and the other relevant principles applicable to Petro-Hunt's established property right and deprived Petro-Hunt of its ownership of the mineral servitudes in perpetuity." *Petro-Hunt III*, 126 Fed. Cl. at 384–85.

Therefore, Petro-Hunt's case is more analogous to *Vereda* and *Allustiarte*, where this court found the adjudication of a takings claim would require the Court of Federal Claims to review the propriety of a district court's actions. *See Vereda*, 271 F.3d at 1375 (holding that the Court of Federal Claims lacked jurisdiction over plaintiff's

takings claim because review would require a determination of the correctness of an administrative forfeiture, which has the same force and effect as a district court judgment); *Allustiarte*, 256 F.3d at 1352 (Court of Federal Claims lacked jurisdiction over a takings claim requiring determination of whether a bankruptcy judgment was correctly decided). Because the Fifth Circuit held that Petro-Hunt had no property interest and therefore there could be no taking, the Court of Federal Claims would necessarily have to find that the Fifth Circuit erred for Petro-Hunt to prevail. Thus, resolution of Petro-Hunt's judicial takings claim depends on the Court of Federal Claims' finding that the Fifth Circuit's decision was in error—something it has no jurisdiction to do.

This court's recent response to a judicial takings claim in *Shinnecock* confirmed that the Court of Federal Claims "cannot entertain a taking[s] claim that requires the court to scrutinize the actions of another tribunal." 782 F.3d at 1353 (citing *Innovair Aviation Ltd. v. United States*, 632 F.3d 1336, 1344 (Fed. Cir. 2011)). This court reasoned that "[p]ermitting parties aggrieved by the decisions of Article III tribunals to challenge the merits of those decisions in the Court of Federal Claims would circumvent the statutorily defined appellate process and severely undercut the orderly resolution of claims." *Id.* The court in *Shinnecock* did not address the general viability of a judicial takings claim, and this court need not do so here, either.[6] It is only necessary for us to decide that

---

6    In *Smith v. United States*, 709 F.3d 1114, 1116–17 (Fed. Cir. 2013), this court noted that "judicial action could constitute a taking of property," and that the Supreme Court applied the theory of a judicial taking in *Stop the Beach*. But the Court's decision in *Stop the Beach* that a cause of action for a judicial taking exists is a plurality decision, and therefore not a binding judg-

because Petro-Hunt's judicial takings claim would require the Court of Federal Claims to overturn the Fifth Circuit's decision, the Court of Federal Claims lacks jurisdiction over that claim.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims to dismiss Petro-Hunt's permanent, temporary, and judicial takings claims for lack of jurisdiction.

**AFFIRMED**

COSTS

No costs.

---

ment. *Stop the Beach*, 560 U.S. at 715–19 (Justice Scalia, joined by Chief Justice Roberts and Justices Thomas and Alito, concluded that a court may effect a taking. There were two separate opinions concurring in the judgment but not in the plurality's views on judicial takings—one by Justice Kennedy, joined by Justice Sotomayor, the other by Justice Breyer, joined by Justice Ginsburg. Justice Stevens did not participate.)