NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM HENRY STARRETT, JR.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1555

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01168-EMR, Judge Eleni M. Roumel.

---

Decided: January 11, 2023

---

WILLIAM STARRETT, JR., Richardson, TX, pro se.

JIMMY MCBIRNEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

PER CURIAM.

William Starrett, Jr., sued the United States in the U.S. Court of Federal Claims (Claims Court), asserting three counts of breach of contract and seeking approximately 11 trillion dollars in damages. In his complaint, Mr. Starrett alleged that he has been forced "[a]gainst his protests" to "advise" in the federal government's alleged remote monitoring of civilians and that he has been subjected to "remote neural monitoring." Claims Ct. Dkt. No. 8 ¶¶ 3–7, 28–29, 31, 40. The Claims Court dismissed the complaint for lack of subject-matter jurisdiction. *Starrett v. United States*, No. 21-cv-1168, 2021 WL 7627745 (Fed. Cl. Sept. 10, 2021); Claims Ct. Dkt. No. 19. We affirm.

I

On April 5, 2021, Mr. Starrett, proceeding pro se, sued the United States in the Claims Court, including three counts in his complaint, each alleging a breach of contract. Claims Ct. Dkt. Nos. 1, 8. The complaint, filed under seal, was unsealed on May 21, 2021. Claims Ct. Dkt. Nos. 6, 11, 12. In the complaint, Mr. Starrett sought damages from and an injunction against the United States. Claims Ct. Dkt. Nos. 1, 8.

In his complaint, Mr. Starrett alleged that, "[a]gainst his protests," he has been forced to "advise" in the federal government's alleged remote monitoring of civilians. Claims Ct. Dkt. No. 8 ¶¶ 3–7, 31, 40. Mr. Starrett also alleged that he himself has been subjected to "remote neural monitoring," with "satellite-relayed or satellite-based technologies being forced upon [him]." *Id.* ¶¶ 28–29. The complaint cites the Tucker Act, 28 U.S.C. § 1491, as the basis for the Claims Court's jurisdiction, Claims Ct. Dkt. No. 8 ¶ 8, and the complaint's appendix contains, among other things, Mr. Starrett's demands to various government agencies that "all harassment . . . end immediately," Claims Ct. Dkt. No. 8-1, at 17 (ECF pagination); invoices that he sent to the U.S. Departments of Defense, Justice,

and Energy, *id.* at 28–50; and responses from the various agencies, *id.* at 19, 25. The agencies, in their responses, stated that insufficient evidence exists of the alleged governmental wrongdoing and that Mr. Starrett's invoices "do not come within the immediate jurisdiction" of the agencies. *Id.*

The United States did not file a response to Mr. Starrett's complaint within the 60 days allowed by Claims Court Rule 12(a)(1)(A). The United States thus defaulted on June 8, 2021, as the Clerk's later entry of default confirmed. Claims Ct. Dkt. Nos. 24, 25, 26. Mr. Starrett moved on July 15, 2021, for the entry of a default judgment against the United States. Claims Ct. Dkt. No. 14. One week later, on July 22, 2021, the government moved to dismiss for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim on which relief could be granted. Claims Ct. Dkt. No. 13, at 1. The Claims Court ordered the government to respond to Mr. Starrett's default-judgment motion and to explain why it had filed its motion to dismiss too late (after the entry of default). Claims Ct. Dkt. No. 16, at 2. The government responded that, "[d]ue to an oversight," government counsel "mistakenly calendared the response deadline to [Mr. Starrett's] complaint based on the . . . date of the ECF notice reflecting the Court's Order unsealing [the] complaint, rather than based on the complaint filing date [itself]." Claims Ct. Dkt. No. 17, at 2.

On September 10, 2021, the Claims Court dismissed the case for lack of subject-matter jurisdiction and denied as moot Mr. Starrett's motion for the entry of default judgment against the United States. *Starrett*, 2021 WL 7627745; Claims Ct. Dkt. No. 19. The Claims Court concluded that Mr. Starrett's complaint does not sufficiently allege a source of entitlement to the damages he seeks— neither a money-mandating statute nor the existence of any express or implied contract with the United States. *Starrett*, 2021 WL 7627745, at *3–4; Claims Ct. Dkt. No.

19, at 5–7.  The Claims Court also concluded that it lacked authority to issue the requested equitable relief.  *Starrett*, 2021 WL 7627745, at \*4; Claims Ct. Dkt. No. 19, at 7.

The Claims Court entered judgment on September 14, 2021, Claims Ct. Dkt. No. 20, and Mr. Starrett moved for reconsideration on October 7, 2021, Claims Ct. Dkt. No. 21, within the 28 days allowed by Claims Court Rule 59(b)(1).  The Claims Court denied reconsideration on February 3, 2022, concluding that it had properly dismissed the case, could not have entered a default judgment against the United States in these circumstances, and had properly unsealed Mr. Starrett's complaint.  *Starrett v. United States*, 158 Fed. Cl. 487, 491–94 (2022); Claims Ct. Dkt. No. 22, at 4–11.  Mr. Starrett timely filed a notice of appeal on March 17, 2022, Claims Ct. Dkt. No. 29, within the 60 days allowed by 28 U.S.C. § 2107(b) and Federal Rule of Appellate Procedure 4(a)(4)(A)(iv).  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

Mr. Starrett argues on appeal that the Claims Court erred by dismissing his complaint, by not entering a default judgment against the United States, and by unsealing his complaint.  Starrett Br. at 6, 10–11, 16–17, 20–22, 27; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (instructing that pro se filings are "to be liberally construed").

## A

We decide de novo whether the Claims Court correctly dismissed Mr. Starrett's complaint for lack of subject-matter jurisdiction.  *See Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1378 (Fed. Cir. 2017) (citing *Fidelity & Guaranty Insurance Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015)).  Mr. Starrett, as the plaintiff, bears the burden of establishing the Claims Court's jurisdiction by a preponderance of the evidence.  *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir.

2013) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)). And although pro se plaintiffs' complaints are interpreted liberally, *Estelle*, 429 U.S. at 106, pro se plaintiffs must still shoulder the burden of satisfying jurisdictional requirements, *Kelley v. Secretary*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

The Tucker Act is a waiver of the United States' sovereign immunity, *United States v. Mitchell*, 463 U.S. 206, 212 (1983), and confers jurisdiction to the Claims Court over, among other things, "any claim against the United States founded either upon . . . any Act of Congress . . . or upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1). "The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citing *Mitchell*, 463 U.S. at 216; *United States v. Testan*, 424 U.S. 392, 398 (1976)). "In the parlance of Tucker Act cases, that source must be 'money-mandating.'" *Id.* (citing *Mitchell*, 463 U.S. at 217; *Testan*, 424 U.S. at 398). Some statutes are money-mandating, though such statutes are "rare," *Maine Community Health Options v. United States*, 140 S. Ct. 1308, 1329 (2020); and where a contract exists, there is a presumption that it is money-mandating, *Boaz Housing Authority v. United States*, 994 F.3d 1359, 1364 (Fed. Cir. 2021). At the pleading stage, a source is money-mandating if the plaintiff makes "a non-frivolous allegation," *Fisher*, 402 F.3d at 1172, that the substantive law "can fairly be interpreted as mandating compensation by the [government]," *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (quoting *Testan*, 424 U.S. at 400); *Maine Community*, 140 S. Ct. at 1328.

No qualifying statute is adequately pleaded. The complaint generally cites 10 U.S.C. §§ 271, 272, 2358, 2371b,

2373, and 2386.[1] Claims Ct. Dkt. No. 8 ¶¶ 44, 106–11.  But Mr. Starrett did not make—and could not have made—a non-frivolous allegation that these statutes are money-mandating.  Sections 271 and 272 permit the Secretary of Defense to provide to civilian law enforcement "any information collected during the normal course of military training or operations that may be relevant" to the civilian authorities' jurisdiction, 10 U.S.C. § 271(a), and to make available to civilian law enforcement "any equipment . . . , base facility, or research facility of the Department of Defense . . . for law enforcement purposes," *id.* § 272.  Section 2358 permits the Secretary of Defense to "engage in basic research." *Id.* § 4001(a).  Section 2371b permits the Director of the Defense Advanced Research Projects Agency to "carry out prototype projects that are directly relevant to enhancing the mission effectiveness of military personnel." *Id.* § 4022(a)(1).  Section 2373 permits the Secretary of Defense, among others, to buy, among other things, "space-flight, telecommunications, and aeronautical supplies." *Id.* § 4023(a).  And § 2386 allows "[f]unds appropriated for a military department" to be "used to acquire," among other things, copyrights and patents.  *Id.* § 3793.

---

[1]    Sections 2358, 2371b, and 2373 were recodified at 10 U.S.C. §§ 4001, 4003, 4004, respectively, effective January 1, 2021.  *See* William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1841(b)(1), 134 Stat. 3388, 4243 (2021).  Sections 2371b and 2373 were further recodified at 10 U.S.C. §§ 4022, 4023, respectively, effective December 27, 2021.  *See* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 1701(u)(2)(B), 135 Stat. 1541, 2151 (2021).  Likewise, § 2386 was recodified at 10 U.S.C. § 3793 effective January 1, 2021.  § 1833(o)(2), 134 Stat. at 4234.

None of these statutes can be fairly interpreted as mandating compensation by the government for what Mr. Starrett alleges. Rather, each statute permits officers of the United States to perform actions relating to defense, law enforcement, or research. Some of the cited statutes permit the government to award contracts to achieve the statutes' ends. *See*, *e.g.*, *id.* § 4001(b) (stating that the Secretary of Defense "may perform research and development projects . . . by contract"); *id.* § 4022(a)(2)(A) (stating that the "authority of this section" may be exercised by contract). But Mr. Starrett has not alleged that he was awarded any such contract.

Mr. Starrett also has not adequately alleged the existence of an express or implied contract with the government. We have said:

> The general requirements for a binding contract with the United States are identical for both express and implied contracts. The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and consideration. A contract with the United States also requires that the [g]overnment representative who entered or ratified the agreement had actual authority to bind the United States.

*Trauma Service Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citations omitted). Here, Mr. Starrett alleges that a person in a red pickup truck visited him and informed him that "he was a target" in a Department of Defense surveillance "exercise to engage and overtake a subversive individual who held ideals contrary to authoritarian policy." Claims Ct. Dkt. No. 8 ¶¶ 37, 39–40. But even if we accept these allegations as true, such facts do not plausibly allege that Mr. Starrett or the government intended to form a contract. Mr. Starrett repeatedly alleges that this surveillance was "without his authorization or consent" and "[a]gainst his protests." *Id.* ¶¶ 4, 40.

Moreover, Mr. Starrett alleges that he "plainly communicated to [the government] that a signed customer services contract with initial payments issued, as to be agreed upon, would be required by [Mr. Starrett]," *id.* ¶ 51, but the complaint contains no allegation (or supporting exhibit showing) that such a signed customer services contract ever existed. Finally, Mr. Starrett points to no government statement or action that could plausibly be interpreted as manifesting a government intent to form a contract. The only government statements submitted with the complaint are agencies' statements that disclaim jurisdiction over Mr. Starrett's invoices. Claims Ct. Dkt. No. 8-1, at 19, 25 (ECF pagination).

Because no statute identified in Mr. Starrett's complaint is money-mandating, and because Mr. Starrett does not plausibly allege the existence of an express or implied contract with the United States, the Claims Court lacked subject-matter jurisdiction over the case and correctly dismissed Mr. Starrett's complaint.

It follows that the Claims Court also correctly denied Mr. Starrett's motion for the entry of default judgment against the United States.[2] Claims Court Rule 55(b)(2) states that a "default judgment may be entered only if the claimant establishes a claim or right to relief by evidence that satisfies the court." "Before a default can be entered, the court must have subject-matter jurisdiction . . . ." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure Civil § 2682 (4th ed. updated Apr. 2022). Because the Claims Court lacked subject-matter jurisdiction over the case, the Claims Court correctly

---

[2] An *entry* of default, such as the one recorded by the Clerk of the Claims Court in this case, is not a default *judgment*. *See* Claims Ct. Rule 55(a), (b)(2), (c).

denied Mr. Starrett's motion for the entry of default judgment against the United States.

## B

Mr. Starrett appears to argue that the Claims Court incorrectly unsealed his complaint. Starrett Br. at 6, 10–11. The complaint has been unsealed and is currently available on the Claims Court's docket. *See* Claims Ct. Dkt. No. 8. We see no reason in this case to depart from the general principle that unsealed matter should not be resealed. *See, e.g., Constand v. Cosby*, 833 F.3d 405, 410 (3d Cir. 2016) ("We and our sister circuit courts have held that appeals seeking to restrain further dissemination of publicly disclosed information are moot. . . . Public disclosure cannot be undone . . . ." (internal quotation marks omitted)); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("But however confidential [the information] may have been beforehand, subsequent to publication it was confidential no longer. . . . We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again."); *Doe No. 1 v. Reed*, 697 F.3d 1235, 1239 (9th Cir. 2012) (similar); *C & C Products, Inc. v. Messick*, 700 F.2d 635, 637 (11th Cir. 1983) (similar); *see also In re Kahn*, 147 F. App'x 187, 187 (Fed. Cir. 2005) ("[A]ll of the filed documents ha[ve] already been made part of the public record and, thus, his request [to seal] [i]s moot.").

## III

We have considered Mr. Starrett's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Claims Court's dismissal of Mr. Starrett's complaint for lack of subject-matter jurisdiction and the denial of Mr. Starrett's motion for the entry of default judgment against the United States.

The parties shall bear their own costs.

**AFFIRMED**