# United States Court of Appeals for the Federal Circuit

---

**HASSAN ALI ABBAS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1342

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00229-LKG, Judge Lydia Kay Griggsby.

---

Decided: December 6, 2016

---

HASSAN ALI ABBAS, Hanover Park, IL, argued pro se.

ALEXANDER ORLANDO CANIZARES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JAMES R. SWEET, BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.

---

Before NEWMAN, LOURIE, and CLEVENGER, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Hassan Ali Abbas appeals the final decision of the United States Court of Federal Claims dismissing his complaint for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims. Because we agree with the Court of Federal Claims that Mr. Abbas's claims are time barred, we affirm.

I

This case arises from Mr. Abbas's complaint against the United States ("U.S." or "the Government") in the Court of Federal Claims for an alleged taking of his property rights in certain pre-World War II German bonds. Mr. Abbas alleges that a series of post-World War II treaties between the U.S. and Germany pertaining to the handling of these bonds effected a regulatory taking without compensation of his right to enforce the bonds against Germany in U.S. courts, in violation of the United States Constitutional requirement that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Court of Federal Claims found that Mr. Abbas's claim was time barred by the applicable statute of limitations. We first provide a short recitation of the relevant historical background.

After World War I, a number of German banks and companies sold bearer bonds that were underwritten and payable in the U.S. *Abrey v. Reusch*, 153 F. Supp. 337, 339 (S.D.N.Y. 1957).[1] Prior to the outbreak of World War II,

---

[1] We are not the first court to deal with these bonds. In particular, the Seventh Circuit case *Korber v. Bundesrepublik Deutschland*, 739 F.3d 1009 (7th Cir. 2014), involves what appear to be the same bonds at issue here. Mr. Abbas was counsel to the plaintiffs in *Korber*, and states in his brief that he "acquired his bonds during

many of the bonds were repurchased by the issuers for eventual retirement. *Id*. Those repurchased bonds no longer represented obligations. *Id*. Nevertheless, the outbreak of World War II prevented the issuing authorities from presenting the bonds to the American trustees or paying agents for cancelation, and thus a large number of the repurchased (but not cancelled) bonds were stored in Berlin during the war. *Id*. Following the occupation of Berlin by the Soviet Union, a large number of the stored bonds found their way into unauthorized hands. *Id*.[2]

---

the *Korber* case." Appellant's Br. at 13. At oral argument, Mr. Abbas represented that he had obtained the bonds as of 2008 when the complaint in *Korber* was filed. Oral Argument (Oct. 4, 2016) at 02:09–02:58.

Other recent cases dealing with similar German pre-war bonds include *Fulwood v. Federal Republic of Germany*, 734 F.3d 72 (1st Cir. 2013), *World Holdings, LLC v. Federal Republic of Germany*, 701 F.3d 641 (11th Cir. 2012), and *Mortimer Off Shore Services, Ltd. v. Federal Republic of Germany*, 615 F.3d 97 (2d Cir. 2010). As the court in *Korber* noted, the plaintiffs in these recent cases have been uniformly unsuccessful in asserting their claims to payment on the bonds.

[2] Mr. Abbas takes issue with the idea that the bonds in question were "looted" or "stolen" by the Soviet occupation forces after the war. Appellant's Br. at 8. Assuming for the sake of argument that Mr. Abbas's implication (*i.e.*, that this story was a fabrication used by Germany to shirk its debt obligations) is correct, it does not change the outcome of this case. As explained more *infra*, the Court of Federal Claims correctly dismissed Mr. Abbas's complaint for lack of subject matter jurisdiction. The court properly did not rule on the substantive merits of Mr. Abbas's complaint, including the relevance (if any) of the provenance of his bonds.

Still, a similarly large number of the bonds remained in the hands of legitimate bona fide purchasers. *See id.*

After the war, Germany[3] was justifiably hesitant to pay off bonds that were possibly invalid, despite expressing a willingness to adopt liability for the pre-war debts of the Weimar Republic and the Third Reich.[4] The situation also posed a problem for holders of valid bonds, who would potentially be forced to share in the limited pool of available German assets with holders of invalid bonds. *See id.* Thus, Germany and the U.S. (as well as other Allied powers) executed a series of laws and treaties that sought to hold Germany responsible for its pre-war bonds (and other debts), while at the same time ensuring that only holders of valid bonds would be paid. *See id.*

The first relevant statute was the Validation Law for German Foreign Currency Bonds of 1952. Gesetz zur Bereinigung von deutschen Schuldverschreibungen, die auf ausländische Währung lauten (Bereinigungsgesetz für deutsche Auslandsbonds–AuslWBG) [Validation Law for German Foreign Currency Bonds], Aug. 25, 1952, BGBl. I at 553 ("Validation Law"). The Validation Law estab-

---

[3] We refer here and throughout the remainder of the opinion to West Germany (formally, the Federal Republic of Germany). East Germany (the German Democratic Republic) was not a party to the agreements described below until the reunification of Germany in 1990.

[4] Authorities in the U.S. similarly had reservations about the bonds. Even after the war was over, as of 1951, the Securities and Exchange Commission continued to request that brokers and dealers in the U.S. refrain from trading in German securities until such time as assurances could be given to investors that the securities constituted "good delivery." *See* Trading In German Securities, 17 C.F.R. § 240 (Jan. 19, 1954).

lished procedures under which Germany would assume liability for foreign currency bonds where bondholders could prove that their bonds were held outside of Germany as of January 1, 1945 (i.e., prior to the Soviet invasion of Germany in late January 1945). *See Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Ger.*, 615 F.3d 97, 102 (2d Cir. 2010). The law required that the bonds and supporting evidence be submitted to an examining authority in Germany (or in the country of bond issue), which would conduct an administrative hearing to determine the bonds' validity. *See id.*

The procedures of the Validation Law were incorporated into a subsequent 1953 agreement between the U.S. and Germany. Validation of German Dollar Bonds, Ger.–U.S., Feb. 25–Apr. 9, 1954, 5 U.S.T. 1 ("1953 Treaty"). The 1953 Treaty consisted of two agreements. The first, Validation of Dollar Bonds of German Issue, Ger.–U.S., Feb. 27, 1953, 4 U.S.T. 797 ("Validation Procedures Treaty"), incorporated the Validation Law (and thus incorporated the procedures for validating German pre-war bonds). The agreement also created the Board for the Validation of German Bonds in the United States (the "Validation Board"), which served the same function as the examining authorities created by the Validation Law and was empowered to conduct the bond validation hearings.[5]

In the second, Certain Matters Arising from the Validation of German Dollar Bonds, Ger.–U.S., Apr. 1, 1953, 4 U.S.T. 885 ("Certain Matters Treaty"), the U.S. agreed that the German bonds at issue would not be enforceable in U.S. courts until they had been validated (i.e., shown to have been outside of Germany on January 1, 1945) "either by the Board for the Validation of German Bonds in the

---

[5]    The U.S.-based Validation Board was dissolved by 1960. *Fulwood*, 734 F.3d at 81 n.7.

United States established by the [Validation Procedures Treaty], or by the authorities competent for that purpose in the Federal Republic." Certain Matters Treaty art. II.

Contemporaneously, the Allied powers and Germany also entered into a separate agreement, German External Debts, Feb. 27, 1953, 4 U.S.T. 443, 333 U.N.T.S. 3 ("London Debt Agreement"), which aimed "to remove obstacles to normal economic relations" between Germany and other nations and to "facilitat[e] a resumption of payments on [Germany's] external debts." *Mortimer*, 615 F.3d at 102 (quoting London Debt Agreement at Proclamation). The London Debt Agreement constituted a settlement offer by Germany for its pre-World War II debt obligations, but did not repeal the validation requirements put into place by the Validation Law, stating that "[o]nly such creditors shall be entitled to benefit under [the Agreement], as . . . accept the offer, or, in the case of other debts, assent to the establishment in accordance with such provisions of terms of payment and other conditions in respect of such debts." *Id.* (quoting London Debt Agreement art. 15(1)). In the wake of the London Debt Agreement, Germany adopted a policy of paying validated bondholders who agreed to settle before paying validated bondholders who refused the settlement offer. *See World Holdings, LLC v. Fed. Republic of Ger.*, 701 F.3d 641, 646 (11th Cir. 2012). It appears that Germany finally finished paying its obligations under the London Debt Agreement, i.e., finished paying settling holders of validated German pre-war bonds, on October 3, 2010. *Id.* at 653.

## II

Mr. Abbas filed suit in the Court of Federal Claims on March 6, 2015, claiming that the 1953 Treaty caused a taking by the U.S. of Mr. Abbas's property rights in certain German pre-war bonds. The Government moved to dismiss Mr. Abbas's complaint for lack of subject matter jurisdiction and failure to state a claim for which relief

could be granted. The Court of Federal Claims granted the motion and dismissed the complaint. *Abbas v. United States*, 124 Fed. Cl. 46, 56 (2015).

First, the court found that Mr. Abbas's claims were untimely. The court explained that a Fifth Amendment takings claim accrues when the taking occurs, and that takings alleged to occur via a treaty occur when the U.S. enters into the treaty. *Id.* at 53. Accordingly, the court found that the undisputed facts showed that Mr. Abbas's claim, i.e., that the 1953 Treaty acted as a taking of his property rights in the bonds, accrued on April 1, 1953 (when the U.S. entered into the treaty). *Id.* Mr. Abbas did not file until 2015, many decades after the accrual of his claim. The court found that his claim was thus time barred under 28 U.S.C. § 2501. *Id.* The Court of Federal Claims also rejected Mr. Abbas's argument that his claim accrued on October 3, 2010 when Germany finished paying the settling holders of validated bonds. *Id.* at 54. The court found that "the date on which [Mr. Abbas] could have filed a claim to enforce the Bonds against Germany is simply not relevant to determining when his takings claim against the United States accrued." *Id.*

Next, the Court of Federal Claims found that Mr. Abbas lacked standing to bring his claim. The court explained that "only persons with a valid property interest at the time of the taking are entitled to compensation." *Id.* at 55 (quoting *CRV Enters., Inc. v. United States*, 626 F.3d 1241, 1249 (Fed. Cir. 2010) (internal quotation marks and citation omitted)). Because Mr. Abbas did not own the bonds when the taking occurred, i.e., when the U.S. entered into the 1953 Treaty, he lacked standing to bring his takings claim. *Id.* Similarly, the Court of Federal Claims found that Mr. Abbas had also failed to state a plausible Fifth Amendment claim because he had no cognizable property interest in the bonds at the time of the taking. *Id.*

Mr. Abbas timely appealed the final decision of the Court of Federal Claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## III

We review de novo the Court of Federal Claims's determination that it lacked subject matter jurisdiction, its dismissal of a complaint on the grounds of standing, and its dismissal for failure to state a claim under Rule 12(b)(6). *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1310 (Fed. Cir. 2011).

We agree with the Court of Federal Claims that Mr. Abbas's claim is barred by the relevant statute of limitations, 28 U.S.C. § 2501, which requires that claims brought in the Court of Federal Claims be filed within six years of accrual of the cause of action.

It is clear from his briefing to this court and from his complaint below that Mr. Abbas's claim is that the U.S. caused a regulatory taking of his right to sue Germany for payment of his bonds when the U.S. entered into the 1953 Treaty. *See, e.g.*, Appellant's Br. at 9 ("Plaintiff alleged causes of action against Germany which have been taken by a U.S. treaty. . . . The U.S. terminated Plaintiff's contract rights under the bonds by treaty with Germany").[6] A cause of action for a taking by treaty accrues

---

[6] *See also id.* at 17 ("Plaintiff, Mr. Abbas, has identified his 'legal claims' against Germany which are property interests which were taken by the U.S. government's treaty with Germany."); *id.* at 18 ("While it is Germany that failed to validate and pay the bonds for no legitimate reason even though the criteria for validation are met and the bonds are valid and authentic, *it is the treaty itself, and the terms and effects thereof, that have taken the Plaintiff's claims and right to sue Germany in the U.S.*" (emphasis added)).

when the treaty in question goes into effect. *See Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481–82 (Fed. Cir. 1994); *see also Hair v. United States*, 52 Fed. Cl. 279, 284 (Fed. Cl. 2002) (citing *Alliance of Descendants of Tex.*, 37 F.3d at 1482), *aff'd* 330 F.3d 1253 (Fed. Cir. 2003).

Under 28 U.S.C. § 2501, Mr. Abbas was required to file his complaint within six years of accrual of his claim. Because his claim is that the 1953 Treaty was a taking of his property, and because the treaty went into effect in 1953, Mr. Abbas was required to file his takings complaint by 1959. Because he did not do so, his claim is barred by the statute of limitations, and the Court of Federal Claims correctly found that it lacked jurisdiction to hear the claim. *See, e.g.*, *Rocky Mountain Helium, LLC v. United States*, No. 2016-1278, 2016 WL 6775965, at *4 (Fed. Cir. Nov. 16, 2016) ("The jurisdiction of the Court of Federal Claims is limited by the six-year statute of limitations of 28 U.S.C. § 2501." (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (holding that § 2501 states a jurisdictional limit))).

Mr. Abbas argues that his claim against the U.S. did not accrue until October 3, 2010, when Germany finished paying settling holders of validated bonds. Because he filed his claim within six years of that date, he argues that the claim is not time barred by 28 U.S.C. § 2501. As the Court of Federal Claims correctly recognized, this argument erroneously conflates the takings claim against the Government and default claims against Germany. The date on which Mr. Abbas could have filed a claim to enforce bonds against Germany is not relevant to determining the date when he could have filed a claim against the U.S. for interference with his rights to sue Germany. The interfering act of the U.S. arose upon execution of the 1953 Treaty, and it is that act that triggered the running of the statute of limitations. Germany's actions with regard to settlement payments made pursuant to the

London Debt Agreement have no bearing on Mr. Abbas's claim against the U.S. Thus, the Court of Federal Claims correctly held that "the timing of Germany's settlement payments under the London Debt Agreement cannot properly serve as the basis for establishing when plaintiff's takings claim accrued in this matter." *Abbas*, 124 Fed. Cl. at 54. In short, Germany's actions do not form a basis for a takings claim against the U.S.[7]

We have considered Mr. Abbas's other arguments and find them to be without merit. We therefore affirm the Court of Federal Claims's decision to dismiss Mr. Abbas's claim for lack of subject matter jurisdiction because his claim was filed decades after the running of the statute of limitation. We do not need to reach, and thus express no opinion on, the Court of Federal Claims's alternative findings that Mr. Abbas both lacked standing to assert his takings claim and failed to state a takings claim for which relief could be granted.

### CONCLUSION

For the reasons above, we affirm the Court of Federal Claims's dismissal of Mr. Abbas's complaint.

### AFFIRMED

---

[7] This holding is consistent with our sister circuits that have considered the issue. *See Fulwood*, 734 F.3d at 80-81; *World Holdings*, 701 F.3d at 653–54; *Mortimer*, 615 F.3d at 117.