# United States Court of Appeals for the Federal Circuit

---

**PETER TURPING, DICK CARTMELL, PHILIP ISAACS, GREG BROWN, JOHN BONGERS, AND OTHER SIMILARLY SITUATED PERSONS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1005

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00872-SGB, Senior Judge Susan G. Braden.

---

Decided: January 9, 2019

---

DOUGLAS E. MCKINLEY, JR., Law Office of Douglas E. McKinley, Jr., Richland, WA, argued for plaintiffs-appellants.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by STEVEN J. GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT.

---

Before LOURIE, CHEN, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

Appellants are a group of former employees of Lockheed Martin Services, Inc. (Lockheed) who appeal a U.S. Court of Federal Claims (Claims Court) decision dismissing their contract claim against the U.S. government (Government). Because the Claims Court correctly determined that Appellants did not prove that an implied-in-fact contract between themselves and the Government exists, we affirm the Claims Court's decision.

## BACKGROUND

During World War II, the Hanford Nuclear Reservation (Hanford) was established by the U.S. Army Corps of Engineers (Army Corps) in the state of Washington to produce nuclear material for use in atomic weapons. J.A. 24–25. After the war, Hanford continued to be used by the Government for nuclear work, but eventually the Department of Energy (DOE) assumed responsibility for managing Hanford. J.A. 25.

Since 1947, DOE and its predecessors engaged contractors, whose employees performed work at Hanford. J.A. 24–25. Each time the work performed by one contractor was transferred to another contractor, the employees that performed the work would stay the same, and they would typically keep their same pay and benefits, including retirement benefits. J.A. 28.

In 1987, DOE awarded a contract moving the management and operation of Hanford to a contractor, Westinghouse Hanford Company (WHC), and directed WHC to create the Hanford Multi-Employer Pension Plan (MEPP). J.A. 27, 29. The MEPP was a contract between "Employers," defined with specific contractor and subcontractor names including WHC, and "Employees," who were employed by the Employers. J.A. 201–202. Each time a

new contractor performs work at Hanford, the definition of "Employer" in the MEPP adds that new contractor. *See* J.A. 102. According to the preamble of the MEPP, the MEPP was created by the Employers for the benefit of the Employees. J.A. 196. The Government is not listed as a party to the MEPP.

The MEPP is run by a Plan Administrator, which Article 11 of the MEPP defines as a committee established by the Employers. J.A. 248. The Plan Administrator may not amend the MEPP without prior DOE approval and may not take any action that has a financial impact on the MEPP without prior written approval of DOE. J.A. 33. Article 10 requires "[e]ach Employer [to] make contributions to the Plan from time to time as the Plan Administrator shall determine but in at least such amount as is required by the minimum funding standards of federal law applicable to the Plan." J.A. 248.

Article 29 of the MEPP, entitled "Terminations for Transfer," requires that employees be able to "receive[] a benefit at Normal Retirement Date which is reflective of his Years of Service on the Hanford Reservation." J.A. 293. Reference to the Government only appears once in the MEPP, and that is in Article 29, where the MEPP states: "A Termination for Transfer means a termination from one contractor on the Hanford Reservation to another which is determined to be in the best interests of the government." *Id.*

On August 6, 1996, DOE announced that the Hanford Management Contract would be transferred from the current contractor (WHC) to a new contractor (Fluor Daniel Hanford or FDH). J.A. 30. The majority of workers received the same post-retirement benefits when the 1996 contract changeover occurred. J.A. 38.

On August 30, 1996, however, some WHC employees were provided with an "Offer Letter" from Lockheed, which was to be a subcontractor to FDH. J.A. 37. The

Offer Letter stated: "[i]f your employee benefits for this position are different than the current site benefit program, a summary is enclosed," but no summary was enclosed. *Id.* The Offer Letter required the WHC employees to sign it by September 9, 1996, if they wanted to accept employment with Lockheed. J.A. 38.

In September 1996, many former employees of WHC, including Appellants, accepted employment at Lockheed and were informed by Lockheed that, upon their retirement, they would not receive retirement benefits—including medical benefits, death benefits, and pension compensation—that were previously afforded under the MEPP. J.A. 39.

Despite being told earlier in October 1996 that Appellants were no longer parties to the MEPP, on October 10, 1996, Appellants were informed[1] that they would in fact remain in the MEPP. J.A. 40. Instead of calculating their pension benefits based on their total years in service, however, their benefits would be calculated using the highest five year salary during their employment at

---

[1] Appellants allege throughout their amended complaint that "the Government" performed certain actions, including making certain statements to Appellants. *See, e.g.*, J.A. 39–41. At times, Appellants also state that the Government made these statements "acting through the MEPP" or "acting through its agent the MEPP." *Id.* These allegations as to what the Government told Appellants, however, fail to reach the "plausible" level required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, the Government is not a party to the MEPP and therefore cannot act "through" the MEPP.

Hanford (the high-five rule). J.A. 41. This was solidified in an amendment to the MEPP, made retroactive to the end of September 1996. *Id.* The Lockheed employees were told that they could not challenge the new changes to their benefits until they retired. *Id.*

In October 2014, Peter Turping retired from Lockheed and notified the Plan Administrator that he intended to begin withdrawing pension benefits from the MEPP. J.A. 42. The Plan Administrator used the high-five rule to calculate Mr. Turping's pension benefits, rather than calculating the benefits using his entire term of service at Hanford. *Id.*

In July 2016, Appellants, including Mr. Turping, filed a class action lawsuit against the Government under the Tucker Act, alleging, *inter alia*, that they had an implied-in-fact contract with the Government and that the Government breached that contract when it refused to provide Appellants pension benefits based on their total years in service. J.A. 22–52. The Government subsequently filed a motion to dismiss Appellants' amended complaint under Rules of the U.S. Court of Federal Claims (RCFC) 12(b)(1) and 12(b)(6). J.A. 6. The Claims Court granted the Government's motion, and Appellants timely appealed.

We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

"This court reviews *de novo* whether the Court of Federal Claims possessed jurisdiction and whether the Court of Federal Claims properly dismissed for failure to state a claim upon which relief can be granted, as both are questions of law." *Wheeler v. United States*, 11 F.3d 156, 158 (Fed. Cir. 1993).

"Whether a contract exists is a mixed question of law and fact." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998). "We review the trial court's

legal conclusions independently and its findings of fact for clear error." *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001). Since we accept all facts pleaded in the complaint as true at the 12(b)(6) stage, the issue of whether a party is in privity of contract with the Government reduces to a question of law, which we review *de novo*. *Cienega Gardens*, 194 F.3d at 1239. "Contract interpretation itself also is a question of law, which we review *de novo*." *Id.*

## DISCUSSION

### A.  Statute of Limitations

"Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "Generally, a claim against the United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Bowen v. United States*, 292 F.3d 1383, 1385 (Fed. Cir. 2002) (internal quotation marks omitted). Repudiation "ripens into a breach prior to the time for performance only if the promisee elects to treat it as such." *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (internal quotation marks omitted). "[I]f the injured party instead opts to await performance, the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance rather than from the earlier date of repudiation." *Id.* at 144 (internal quotation marks omitted).

We agree with the Claims Court that performance occurred when each participant received his or her benefits, *i.e.*, on the participant's "Normal Retirement Date." *See* J.A. 182. Because Mr. Turping did not retire until 2014, which is fewer than 6 years before he filed this lawsuit, Appellants' contract claims are not barred by the statute of limitations. *See* J.A. 5.

The Government argues that any repudiation here was not wholly anticipatory because Appellants allege that the Government breached multiple provisions of the contract, and therefore the statute of limitations should have started running immediately upon the Government's first breach of the MEPP, which took place in 1996 or 1997. Appellee Br. at 36–40 (citing *Kinsey v. United States*, 852 F.2d 556, 558 (Fed. Cir. 1988)). The Government then cites to specific facts in the amended complaint (*e.g.*, that the Government refused to allow Appellants to withdraw their pensions, in violation of MEPP Article 26 and federal statute) that Appellants could have cited in support of an allegation that the Government breached the MEPP. *Id.* at 37–38.

But Appellants did not bring an action against the Government's alleged breach of Article 26 or its alleged federal law violations. Accordingly, these instances of potential contractual nonperformance are not relevant to the analysis. We must focus on the claim that is in front of us in this appeal, and that is Appellants' allegation that the Government breached its implied-in-fact contract, the performance of which took place at retirement.

## B. Implied-in-Fact Contract

The Tucker Act provides the Claims Court with jurisdiction to hear claims against the United States that are founded upon, among other things, an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). "An implied-in-fact contract is one founded upon a meeting of minds and is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003). "[T]he requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs." *Id.* An implied-in-fact contract with the Government requires proof of (1) mutuality of intent, (2)

consideration, (3) an unambiguous offer and acceptance, and (4) "actual authority" on the part of the Government's representative to bind the Government in contract. *Id.* Plaintiffs have the burden to prove the existence of an implied-in-fact contract. *Id.*

"As a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (citing Restatement (Second) of Contracts § 18 (1981)). "To satisfy its burden to prove such a mutuality of intent, a plaintiff must show, by objective evidence, the existence of an offer and a reciprocal acceptance." *Id.*

Appellants have not met their burden of proving that mutuality of intent between the Government and Lockheed's employees exists. Appellants argue that "[t]he government made two promises to the Hanford workers" when the MEPP was formed: (1) an implicit promise that the government would provide the funds to meet the pension obligations set forth in the MEPP; and (2) an explicit promise in Article 29 of the MEPP to workers that when they retire from Hanford, they will receive credit in the calculation of their pensions for all their years working at Hanford, even if the Government changed contractors. Appellants Op. Br. at 7–8.

But nothing in the MEPP indicates intent by the *Government* to be in privity of contract with Lockheed's employees. Rather, the MEPP only evidences a contractual relationship between *Lockheed* and its employees. Notably, the MEPP does not list the Government as a party to the contract. Rather, the MEPP states that it was created by *"Employers"* for the benefit of their Employees. J.A. 197. Appellants do not dispute that the "Employers" referenced in the MEPP do not include the Government, but rather refer to contractors and subcontractors such as Lockheed. *See* J.A. 201–202. The MEPP

also specifies that the Plan Administrator, established by the Employers, is the entity that funds the plan, not the Government. J.A. 248. And the MEPP places responsibility for benefits determinations into the hands of the Plan Administrator, not the Government. J.A. 293.

"It is a hornbook rule that, under ordinary government prime contracts, subcontractors do not have standing to sue the government under the Tucker Act, 28 U.S.C. § 1491 . . . ." *Erickson Air Crane Co. of Wash. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984). "The government consents to be sued only by those with whom it has privity of contract, which it does not have with subcontractors." *Id.* In two-tiered contract schemes, the Government's obligations are directed to the contractor, with whom it shares a contract, and not the subcontractor, with whom it shares no direct contractual relationship. *Cienega Gardens*, 194 F.3d at 1245. "Aggrieved subcontractors have the option of enforcing their subcontract rights against the prime contractor in appropriate proceedings, or of prosecuting a claim against the government through and in right of the prime contractor's contract, and with the prime contractor's consent and cooperation." *Erickson*, 731 F.2d at 813. Employees are treated as subcontractors for the purposes of this rule. *United States v. Munsey Trust Co. of D.C.*, 332 U.S. 234, 241 (1947); *see also Bolin v. United States*, 221 Ct. Cl. 947, 948 (1979). Absent any indicia in the MEPP or other evidence proffered by Appellants of the Government's specific intent to be contractually obligated to Lockheed's employees, we find that privity of contract between Appellants and the Government does not exist.

Appellants' argument that the Government "unilaterally forced the Hanford contractors and their employees to participate in the MEPP," and therefore the Government intended to be bound, is unavailing. Appellants Op. Br. at 32–33. The same is true for Appellants' focus on the Government's alleged "control" in the creation and admin-

istration of the MEPP. *Id.* at 6. Our case law has made clear that the "degree of [government] involvement with a project does not create privity [between the government and a subcontractor] so as to allow suit against the government." *Cienega Gardens*, 194 F.3d at 1245; *see also id.* at 1244–45 ("That the Federal Government has intimate control over a project, including prior approval of plans and costs, does not establish liability here for claims by a contractor [whose contract is only with a third party].") (quoting *Marshall N. Dana Const., Inc. v. United States*, 229 Ct. Cl. 862, 863 (1982)). "Nor does this degree of involvement indicate an implied-in-fact contract enforceable against the United States." *Dana Const.*, 229 Ct. Cl. at 863.

In *Dana Construction*, a construction contractor contracted with an Indian Housing Authority (IHA) that received federal funds from the U.S. Department of Housing and Urban Development (HUD) to build a low-income housing project. *Id.* at 862. The Court of Claims determined that the construction contractor could not assert a claim for breach of contract against HUD because the construction contractor's privity of contract was with the IHA, not HUD. *Id.* at 863. The Court of Claims emphasized that, "[b]y funding and regulating programs designed for the public good the U.S. is acting in its role as a sovereign and the moneys promised . . . do not establish any contractual obligation, express or implied, on the part of the United States." *Id.* at 864.

The same principle applies in this case. The Government funds Lockheed and other Employers to manage Hanford, but there is no evidence that the Government intended to be contractually obligated to Lockheed's or other Employers' employees, either through the MEPP or by other means. Without this mutuality of intent, Appellants fail to meet their burden of proving that an implied-

in-fact contract exists between the Government and Lockheed's employees.[2]

Because we determine no mutuality of intent exists, we do not reach the question of whether the other required elements of an implied-in-fact contract exist in this case. We have reviewed Appellants' other arguments, but find them unpersuasive. Accordingly, we affirm the Claims Court's decision finding that no implied-in-fact contract exists.

**AFFIRMED**

---

[2]    Appellants argue that WHC acted as the Government's "agent" in drafting Article 29 of the MEPP, which provided for Hanford workers to receive benefits reflective of their total years of service. Appellants Op. Br. at 54; J.A. 293. Appellants do not plead sufficient plausible facts to support this agency argument. *Iqbal*, 556 U.S. at 678. Likewise, Appellants cannot support their broad allegation that only the Government—a non-party to the MEPP—had the authority to "enforce" Article 29 and compel subcontractors to remain in the MEPP. Appellants Op. Br. at 9–10; *see Iqbal*, 556 U.S. at 678.