NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SAMUEL J. MAY, DBA SOFT PLANET SYNERGY, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1124

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01496-CNL, Judge Carolyn N. Lerner.

---

Decided: June 6, 2023

---

SAMUEL J. MAY, Lehi, UT, pro se.

KRISTIN ELAINE OLSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE.

---

Before REYNA, TARANTO, and STOLL, *Circuit Judges.*

PER CURIAM.

Samuel May brought the present action against the United States in the U.S. Court of Federal Claims (Claims Court) in June 2021. Central to this action is Mr. May's allegation that his unsuccessful 2010 lawsuit in federal district court against his former employer Amgen, Inc.—which Mr. May brought on behalf of the United States under the False Claims Act—alerted the United States to alleged misconduct by Amgen and thereby helped the United States secure a settlement with Amgen in December 2012, under which Amgen paid the government more than half a billion dollars. In the present action, Mr. May seeks a share of the settlement amount, asserting constitutional, contract, tort, and 42 U.S.C. § 1983 claims against the United States. The Claims Court dismissed the action for lack of subject-matter jurisdiction. We affirm, concluding that Mr. May's takings and contract claims are time-barred by 28 U.S.C. § 2501 and that his remaining claims are outside the Claims Court's jurisdiction for substantive reasons to the extent that they are not time-barred.

I

A

Mr. May was employed from April 2002 until June 2006 by Amgen, which is not a party to this appeal or to the underlying Claims Court case. After suing Amgen in California state court for wrongful termination, among other things, *see* Complaint, *May v. Amgen*, No. SC050255 (Cal. Super. Ct. Apr. 26, 2007), Mr. May voluntarily dismissed that suit and demanded arbitration for materially the same claims in February 2008.

The arbitrator ruled in favor of Amgen in October 2011, and a Colorado state court confirmed the arbitration award in March 2012. The federal district court likewise denied Mr. May's petition to vacate or modify the arbitration award under the Federal Arbitration Act, 9 U.S.C. §§ 1–16.

*See May v. Amgen, Inc.*, No. C 12-01367, 2012 WL 2196151 (N.D. Cal. June 14, 2012). The Ninth Circuit affirmed the district court's judgment, *see May v. Amgen, Inc.*, 564 F. App'x 313 (9th Cir. 2014) (per curiam), and the Supreme Court denied certiorari, *see May v. Amgen, Inc.*, 574 U.S. 1193 (2015).

While the arbitration was pending, on June 11, 2010, Mr. May filed a *qui tam* complaint against Amgen in the U.S. District Court for the Northern District of California under under the False Claims Act, 31 U.S.C. §§ 3729–3733. He alleged that Amgen, among other things, knowingly made false statements to the Food and Drug Administration (FDA) and knowingly promoted a drug (Aranesp) for indications not approved by the FDA. *See* Complaint ¶ 10, *United States ex rel. May v. Amgen Inc.*, No. C10-2577 (N.D. Cal. June 11, 2010).

The False Claims Act imposes civil liability on "any person who," among other things, "knowingly presents, or causes to be presented," to the United States "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). An action under the False Claims Act—in district court, *see* 31 U.S.C. § 3732(a)—"may be commenced in one of two ways." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 (2000). The Attorney General may bring a civil action directly against the alleged false claimant, or a private person (called the relator) may bring a *qui tam* civil action against the alleged false claimant "in the name of the [g]overnment." 31 U.S.C. § 3730(a), (b)(1).

If a relator brings a *qui tam* action, the relator must serve a copy of the complaint and any supporting evidence on the United States, which then has 60 days to decide whether it will intervene in the action. *Id.* § 3730(b)(2), (4). If the United States intervenes, then it has "the primary responsibility for prosecuting the action," but the relator may continue to participate as a party. *Id.* § 3730(c)(1). If

the United States declines to intervene, then the relator conducts the action, unless the court permits the United States to intervene later for good cause shown. *Id.* § 3730(b)(4)(B), (c)(3). The relator receives a portion of any proceeds from the *qui tam* action: 15–25% if the United States intervenes and 25–30% if the United States does not intervene. *Id.* § 3730(d)(1)–(2). *See generally Vermont Agency of Natural Resources*, 529 U.S. at 768–70.

In Mr. May's *qui tam* action, the United States elected not to intervene. Eventually, on January 5, 2012, the Northern District of California dismissed Mr. May's *qui tam* suit for failure to prosecute, reasoning that Mr. May was proceeding pro se and, in the Ninth Circuit, a pro se plaintiff cannot maintain a *qui tam* action. *See* Order, *United States ex rel. May v. Amgen Inc.*, No. C10-2577 (N.D. Cal. Jan. 5, 2012) (citing *Stoner v. Santa Clara County Office of Education*, 502 F.3d 1116, 1126–27 (9th Cir. 2007)).

## B

In December 2012, Amgen settled 10 separate *qui tam* actions brought by relators other than Mr. May. The settlement agreement memorialized the United States' contentions that "Amgen knowingly promoted the sale and use of Aranesp for indications," "dosing, intervals, amounts, or regiments" that were "not approved by the [FDA]." U.S. Supp. Appx. 339 ¶ G(1)(a). The settlement agreement required Amgen to pay about $587.3 million to the United States and $24.9 million to certain States (with more to be paid under a criminal plea agreement).

Mr. May, believing that he was entitled to a share of the settlement, moved in April 2016 to reopen his *qui tam* action in the Northern District of California. *See* Plaintiffs' Notice of Motion, *United States ex rel. May v. Amgen Inc.*, No. C10-2577 (N.D. Cal. Apr. 28, 2016). The court denied the motion because Mr. May still had not retained counsel. *See* Order, *United States ex rel. May v. Amgen Inc.*, No.

C10-2577 (N.D. Cal. July 12, 2016) (citing *Stoner*, 502 F.3d at 1126).  Mr. May appealed to the Ninth Circuit, which told him that it would dismiss the appeal unless he obtained counsel within 35 days.  *See* Order, *United States ex rel. May v. Amgen Inc.*, No. 16-16394 (9th Cir. Aug. 31, 2016) (per curiam).  Approximately six months later, on March 2, 2017, the Ninth Circuit dismissed the appeal because Mr. May "ha[d] not obtained counsel."  *See* Order, *United States ex rel. May v. Amgen Inc.*, No. 16-16394 (9th Cir. Mar. 2, 2017) (per curiam).

Eight days later, on March 10, 2017, Mr. May filed a new complaint in the U.S. District Court for the District of Colorado against Amgen, the United States, and several federal agencies and officials.  *See* Complaint, *United States ex rel. May v. United States*, No. 17-cv-00637 (D. Colo. Mar. 10, 2017).  In that complaint, Mr. May asserted several contract and tort claims and sought a 25–30% relator's share of the settlement amount.  In August 2018, the District of Colorado granted Amgen's motion to dismiss for failure to state a claim upon which relief can be granted and, as for the federal government parties, dismissed the contract claims for lack of subject-matter jurisdiction and granted summary judgment rejecting the tort claims.  *See United States ex rel. May v. United States*, No. 17-cv-00637, 2018 WL 7141426, at *3, *8 (D. Colo. Aug. 29, 2018).  The Tenth Circuit affirmed.  *See United States ex rel. May v. United States*, 839 F. App'x 214 (10th Cir. 2020).

C

On June 15, 2021, Mr. May filed his Claims Court complaint in the case now before us on appeal.  Mr. May asserted in the complaint that, because his original *qui tam* complaint "ultimately facilitated" the United States' recovery from Amgen under the 2012 settlement agreement, he is entitled to a 25–30% relator's share of the settlement amount. U.S. Supp. Appx. 428 ¶ 37.  He asserted breach of contract; breach of the implied covenant of good faith and

fair dealing; professional negligence; a wrong assertedly within 42 U.S.C. § 1983; and violations of the First Amendment, the Fifth Amendment's Takings Clause, and the Fourteenth Amendment's Equal Protection Clause. U.S. Supp. Appx. 430–38.

The United States moved to dismiss under Claims Court Rule 12(b)(1) and (6), and on July 13, 2022, the Claims Court dismissed the case for lack of jurisdiction. *See May v. United States*, No. 21-1496C, 2022 WL 2717721 (Fed. Cl. July 13, 2022). The Claims Court concluded first that at least the contract and takings claims (and most if not all others) were barred by 28 U.S.C. § 2501, which requires a claim against the United States in the Claims Court to be filed within six years of the claim first accruing. *See id.* at *5–6. The Claims Court also concluded that it lacked subject-matter jurisdiction over all of Mr. May's claims for substantive reasons, explaining in part that, because Mr. May's claims "rest on his alleged entitlement to a relator's share" of the settlement, the Claims Court would be required "to determine whether [Mr. May] 'had a valid *qui tam* suit under the False Claims Act'"—a determination that the Claims Court lacks jurisdiction to make. *Id.* at *6–7 (quoting *LeBlanc v. United States*, 50 F.3d 1025, 1030–31 (Fed. Cir. 1995)).

Mr. May timely sought reconsideration under Claims Court Rules 59 and 60, but the Claims Court denied the motion on October 27, 2022. Mr. May timely filed a notice of appeal on October 31, 2022, invoking our jurisdiction under 28 U.S.C. § 1295(a)(3). We dismissed the appeal on December 2, 2022, for non-payment of the docketing fee required by Federal Circuit Rule 52(a)(1), but when Mr. May then paid the docketing fee, we reinstated his appeal.

II

We decide de novo whether the Claims Court had subject-matter jurisdiction over Mr. May's claims in this case, in which the jurisdictional issue does not depend on

findings on contested facts.   *See Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1378 (Fed. Cir. 2017) (citing *Fidelity & Guaranty Insurance Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015)).  Mr. May bears the burden of establishing the Claims Court's jurisdiction, *see Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)), although we interpret pro se plaintiffs' complaints liberally, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  We conclude that Mr. May's Fifth Amendment takings claim and his contract claims are time-barred by 28 U.S.C. § 2501 and that the Claims Court lacks subject-matter jurisdiction for substantive reasons over Mr. May's remaining constitutional, tort, and § 1983 claims, to the extent that they are not time-barred by § 2501.

## A

28 U.S.C. § 2501 provides: "Every claim of which the [Claims Court] has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  This six-year statute of limitations is jurisdictional, *see John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1091 (Fed. Cir. 2018) (citing *John R. Sand & Gravel*, 552 U.S. 130): It is not subject to waiver, forfeiture, or extension by equitable considerations, such as equitable tolling, *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (citing *John R. Sand & Gravel*, 552 U.S. at 132–35); *see generally MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S. Ct. 927, 936 (2023) (noting consequences of "jurisdictional" status); *Wilkins v. United States*, 143 S. Ct. 870, 875–76 (2023) (same).  "Generally, a claim against the United States first accrues on the date when all the events have occurred which fix the liability of the [g]overnment and entitle the claimant to institute an action."  *Turping v. United States*, 913 F.3d 1060, 1064

(Fed. Cir. 2019) (quoting *Bowen v. United States*, 292 F.3d 1383, 1385 (Fed. Cir. 2002)).

A Fifth Amendment takings claim, in the present context, has accrued (at least) by the time "the taking action occurs"—*i.e.*, when "the government deprives an owner of the use of his or her property"—and "the plaintiff knew or should have known about the existence" of the government's action. *Petro-Hunt*, 862 F.3d at 1378; *see Caquelin v. United States*, 959 F.3d 1360, 1371–72 (Fed. Cir. 2020) (taking occurs when government action causes loss of property interest plaintiff would otherwise have had); *Memmer v. United States*, 50 F.4th 136, 145 (Fed. Cir. 2022) (same). A breach-of-contract claim, in the present context, ordinarily accrues when "the alleged breach[] occur[s]," *Brighton Village Associates v. United States*, 52 F.3d 1056, 1060 (Fed. Cir. 1995), *i.e.*, "when the [alleged] contractor could ordinarily demand his money and bring his suit if payment was not made," *Lins v. United States*, 688 F.2d 784, 787 (Ct. Cl. 1982) (quoting *Nager Electric Co. v. United States*, 368 F.2d 847, 852 (Ct. Cl. 1966)); *see also Franconia Associates v. United States*, 536 U.S. 129, 142–43 (2002) ("Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach." (citing Restatement (Second) of Contracts § 235(2) (1979))).

Here, Mr. May alleges that the Amgen–United States settlement agreement was a taking of his property and a breach of contract by the United States. The alleged taking and the alleged breach of contract occurred by December 2012, when the settlement agreement was executed. *Cf. Abbas v. United States*, 842 F.3d 1371, 1375 (Fed. Cir. 2016) ("Because his claim is that the 1953 Treaty was a taking of his property, and because the treaty went into effect in 1953, Mr. Abbas was required to file his takings complaint by 1959."). Mr. May also knew of the settlement agreement's existence by no later than May 1, 2015, the date that Mr. May filed a motion for reconsideration in the

Northern District of California action that ultimately denied Mr. May's petition to vacate or modify the original arbitration award. *See May*, 2012 WL 2196151, *aff'd*, 564 F. App'x 313 (9th Cir. 2014) (per curiam), *cert. denied*, 574 U.S. 1193 (2015). In that May 1, 2015 filing, Mr. May stated:

> Amgen settled with the US [g]overnment and ten other whistleblowers . . . to terminate all pending civil and criminal investigations including Plaintiffs unresolved qui tam claims. Plaintiff Samuel May was wholly EXCLUDED even though he was also a bonafide original-source qui tam relator and PARTY to the settlement at the outset.

U.S. Supp. Appx. 150 (Mr. May's May 1, 2015 Motion for Leave to File Motion for Reconsideration in N.D. Cal.).

Mr. May's Fifth Amendment takings claim and his contract claims thus accrued no later than May 1, 2015: By that date, the alleged taking and breach of contract had occurred, and Mr. May was aware of the alleged taking and breach. *See Petro-Hunt*, 862 F.3d at 1378. Because Mr. May filed his complaint in the Claims Court on June 15, 2021, more than six years after the date that the takings and breach of contract claims first accrued, those claims are time-barred by § 2501.

Mr. May briefly alludes in his complaint to the "continuing claim doctrine," U.S. Supp. Appx. 428–29 ¶ 41, a doctrine that, when applicable, "allows [the Claims Court to hear] 'later arising claims even if the statute of limitations has lapsed for earlier events,'" *Tamerlane, Ltd. v. United States*, 550 F.3d 1135, 1145 (Fed. Cir. 2008) (quoting *Tamerlane, Ltd. v. United States*, 80 Fed. Cl. 724, 736 (2008)). But "for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Estates-Fairfield Development Co. v. United States*,

127 F.3d 1449, 1456 (Fed. Cir. 1997). Here, Mr. May's Fifth Amendment takings claim and his contract claims are based on "a single alleged wrong," *Wells v. United States*, 420 F.3d 1343, 1345 (Fed. Cir. 2005): nonpayment of his alleged share of the Amgen–United States settlement agreement. "[T]here was a single agreement that was [allegedly] breached on a single occasion," a circumstance outside the continuing-claims doctrine. *Tamerlane*, 550 F.3d at 1146.[1]

For those reasons, we agree with the Claims Court that Mr. May's Fifth Amendment takings claim and his contract claims are time-barred by § 2501.

B

Mr. May's complaint also alleges other constitutional claims (violations of the First Amendment and of a constitutional right to equal protection of the laws[2]), a tort claim of professional negligence, and a § 1983 claim. To the extent that these claims arise from the Amgen–United States settlement agreement, the claims are time-barred for the reasons explained above. And to the extent that these claims are not time-barred—*e.g.,* to the extent that they

---

[1]    Mr. May calls our attention to the Supreme Court's recent decision in *Tyler v. Hannepin County, Minnesota*, No. 22-166, 2023 WL 3632754 (U.S. May 25, 2023). The decision in *Tyler*, though it involves a takings claim, does not involve a statute-of-limitations issue, and it does not alter the analysis of the present case.

[2]    Although Mr. May invokes the Fourteenth Amendment's Equal Protection Clause, that clause does not restrict the federal government. We treat the complaint as invoking the Fifth Amendment, which the Supreme Court has long held to impose an equal-protection obligation on the federal government. *See, e.g., Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

arise from alleged actions by the United States after the execution of the Amgen–United States settlement agreement, *see, e.g.*, U.S. Supp. Appx. 437 ¶ 83 ("Plaintiff May . . . is unduly harassed continually [as] a whistleblower/snitch to date.")—the Claims Court lacks subject-matter jurisdiction over the claims for substantive reasons.

As relevant here, the Claims Court could have subject-matter jurisdiction over Mr. May's claims only if they come within the Tucker Act, which confers jurisdiction on the Claims Court only over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). But for a plaintiff's claim to come within the Tucker Act, which does not itself provide a cause of action for money damages, the "plaintiff must identify a separate source of substantive law that creates the right to money damages"—*i.e.*, a so-called "money-mandating" source of law for the alleged wrong. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005); *see Maine Community Health Options v. United States*, 140 S. Ct. 1308, 1328–29 (2020). At the pleading stage, a substantive law is money mandating if the plaintiff makes a non-frivolous allegation that the law "can fairly be interpreted as mandating compensation by the [United States]." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009); *see Maine Community*, 140 S. Ct. at 1327–28.

Except for his takings claim, addressed above, Mr. May has not alleged a money-mandating provision of the Constitution. The First Amendment, we have held, does not mandate the payment of money for a violation, *see United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983); nor does the Constitution's guarantee of equal protection, *LeBlanc*, 50 F.3d at 1028. The Claims Court likewise lacks subject-matter jurisdiction over Mr. May's tort claim because tort claims are outside the Tucker Act. *See Brown v.*

*United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) ("[The Claims Court] lacks jurisdiction over tort actions against the United States." (citing 28 U.S.C. § 1491(a)(1); *Keene Corp v. United States*, 508 U.S. 200, 214 (1993))).

Finally, the Claims Court does not have subject-matter jurisdiction over Mr. May's § 1983 claim against the United States. That is so at least because he has not made any allegation passing the jurisdictional threshold of non-frivolousness, *see Shapiro v. McManus*, 577 U.S. 39, 45 (2015); *Bell v. Hood*, 327 U.S. 678, 683 (1946), that the federal government has committed a wrong "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia," 42 U.S.C. § 1983, to which § 1983 is limited. Accordingly, there is no jurisdictionally adequate allegation that § 1983 is money-mandating as to the United States here. In addition, the jurisdictional grant to district courts for much if not all of the scope of § 1983, *see* 28 U.S.C. § 1343, precludes Tucker Act jurisdiction at least within that scope. *See United States v. Bormes*, 568 U.S. 6, 12 (2012) (explaining that the "Tucker Act is displaced . . . when a law assertedly imposing monetary liability on the United States contains its own judicial remedies"). Mr. May has not identified how, if at all, his particular § 1983 claim could avoid that principle.

## III

We have considered Mr. May's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Claims Court's dismissal of Mr. May's complaint for lack of subject-matter jurisdiction.

No costs.

**AFFIRMED**